No. 23-40463

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JOEL FRANCOIS JEAN,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:08-CR-101-1

BRIEF FOR APPELLANT UNITED STATES OF AMERICA

Damien M. Diggs
  United States Attorney
  Eastern District of Texas

Bradley Visosky
  Assistant United States Attorney
  101 E. Park Boulevard, Suite 500
  Plano, Texas 75074
  (972) 509-1201

ATTORNEYS FOR THE UNITED STATES

## Statement Regarding Oral Argument

In the government's view, oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record. *See* Fed. R. App. P. 34(a)(2)(C).

# Table of Contents

**Page(s)**

Statement Regarding Oral Argument....................................................i

Table of Authorities ...............................................................iii

Statement of Jurisdiction ......................................................... 1

Statement of the Issue............................................................. 1

Statement of the Case ............................................................. 1

Summary of the Argument.................................................... 11

Argument ....................................................................... 13

Conclusion...................................................................... 27

Certificate of Service.......................................................... 28

Certificate of Compliance ................................................... 26

# Table of Authorities

**Federal Cases**                                                                 **Page(s)**

*Dorsey v. United States,*
  567 U.S. 260 (2012) ....................................................................... 24, 25

*ITT Rayonier Inc. v. United States,*
  651 F.2d 343 (5th Cir. 1981) .............................................................. 4

*Mathis v. United States,*
  579 U.S. 500 (2016) ................................................................. *passim*

*United States v. Andrews,*
  12 F.4th 255 (3d Cir. 2021) ............................................................ 22

*United States v. Booker,*
  543 U.S. 220 (2005) ........................................................................ 6

*United States v. Brock,*
  39 F.4th 462 (7th Cir. 2022) ................................................ 16, 22, 26

*United States v. Chambliss,*
  948 F.3d 691 (5th Cir. 2020) .......................................................... 13

*United States v. Chen,*
  48 F.4th 1092 (9th Cir. 2022) ......................................................... 22

*United States v. Crandall,*
  25 F.4th 582 (8th Cir. 2022) ........................................................... 22

*United States v. Elam,*
  2023 WL 6518115 (5th Cir. Oct. 5, 2023) ....................................... 14

*United States v. Escajeda,*
  58 F.4th 184 (5th Cir. 2023) .................................................. *passim*

*United States v. Havis,*
   927 F.3d 382 (6th Cir. 2019) ............................................................ 24

*United States v. Hinkle,*
   832 F.3d 569 (5th Cir. 2016) ................................................. *passim*

*United States v. Hunter,*
   12 F.4th 555 (6th Cir. 2021) ............................................................ 25

*United States v. Jarvis,*
   999 F.3d 442 (6th Cir. 2021) ............................................................ 21

*United States v. Jenkins,*
   50 F.4th 1185 (D.C. Cir. 2022) .............................................. *passim*

*United States v. King,*
   40 F.4th 594 (7th Cir. 2022) ..................................... 19, 20, 22, 26

*United States v. McCall,*
   56 F.4th 1048 (6th Cir. 2002) ............................................... *passim*

*United States v. McCoy,*
   981 F.3d 271 (4th Cir. 2020) ............................................................ 22

*United States v. McGee,*
   992 F.3d 1035 (10th Cir. 2021) ........................................................ 22

*United States v. McMaryion,*
   64 F.4th 257 (5th Cir. 2023) ............................................................. 9

*United States v. McMaryion,*
   2023 WL 4118015 (5th Cir. June 22, 2023) ............................ *passim*

*United States v. Michael,*
   576 F.3d 323 (6th Cir. 2009) ............................................................. 6

*United States v. Raygoza-Garcia,*
  902 F.3d 994 (9th Cir. 2018) ............................................. 4

*United States v. Ruth,*
  966 F.3d 642 (7th Cir. 2020) ........................................... 26

*United States v. Ruvalcaba,*
  26 F.4th 14 (1st Cir. 2022) ............................................. 22

*United States v. Shkambi,*
  993 F.3d 388 (5th Cir. 2021) ........................................... 14

*United States v. Tanksley,*
  848 F.3d 347 (5th Cir. 2017) ......................................... 4, 5

*United States v. Thacker,*
  4 F.4th 569 (7th Cir. 2021) ................................... 18, 22, 26

*United States v. Vaughn,*
  62 F.4th 1071 (7th Cir. 2023) .................................... 21, 22

*United States v. Wilson,*
  77 F.4th 837 (D.C. Cir. 2023) .................................... 14, 21

**Federal Statutes and Rules**

18 U.S.C. § 924(c) ............................................................ 2

18 U.S.C. § 924(e) ............................................................ 6

18 U.S.C. § 3231 ............................................................. 1

18 U.S.C. § 3553(a) ...................................................... 9, 14

18 U.S.C. § 3582(c)(1)(A) ...................................... 1, 5, 11, 14

18 U.S.C. § 3742(b) .......................................................... 1

21 U.S.C. § 846 ............................................................................... 2

21 U.S.C. § 841(b)(1)(B) ................................................................. 2

28 U.S.C. § 994(h) ........................................................................... 6

28 U.S.C. § 994(t) .............................................................. 12, 20, 22

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 2255 ............................................................ 3, 5, 11, 15

28 U.S.C. § 2255(f)(3) ..................................................................... 4

Pub. L. No. 115-391 ...................................................................... 13

Fed. R. App. P. 32(a)(6) ............................................................... 28

Fed. R. App. P. 32(a)(7)(B) .......................................................... 28

Fed. R. App. P. 32(f) ..................................................................... 28

Fed. R. App. P. 32(g) ..................................................................... 28

Fed. R. Evid. 201 ............................................................................ 4

U.S.S.G. § 1B1.13 ........................................................................... 7

U.S.S.G. § 4B1.1 ................................................................... 2, 3, 6

## STATEMENT OF JURISDICTION

The government appeals the district court's (Truncale, J.) grant of Joel Francis Jean's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), awarding Jean a time-served sentence. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).

## STATEMENT OF THE ISSUE

Whether the district court erred in concluding that a nonretroactive change in sentencing law, together with the defendant's alleged post-sentencing rehabilitation, constituted extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

## STATEMENT OF THE CASE

### A. Jean pleads guilty to and is convicted of charges of drug conspiracy (cocaine) and possession of a firearm in furtherance of a drug-trafficking crime.

In early August 2007, officers conducted surveillance of various men suspected of moving illegal drugs back and forth between an apartment and rooms at a Super 8 motel in Mont Belvieu, Texas. ROA.939. Traffic stops revealed that the men were transporting large amounts of marijuana and cocaine, and a .32 caliber pistol was found in a glove compartment. ROA.939-40. After getting a search warrant for the apartment, officers found cocaine and marijuana residue and

wrappings, $93,000 in cash, two semi-automatic assault-type rifles, a nine-millimeter rifle, and a pistol. ROA.940. Officers later learned that Jean controlled the apartment and supplied the marijuana and cocaine. ROA.940.

In July 2008, a grand jury returned an indictment charging Jean with conspiracy to possess with intent to distribute between 500 grams and five kilograms of cocaine, 21 U.S.C. § 846 (count one); conspiracy to possess with intent to distribute between 50 and 100 kilograms of marijuana, 21 U.S.C. § 846 (count two); and possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c) (count three). ROA.938. The government later filed a notice and information listing two of Jean's prior Texas convictions for possession with intent to deliver a controlled substance (cocaine) for purposes of increased punishment under 21 U.S.C. §§ 841(b)(1)(B) and 851. ROA.939.

The day that trial was to start, Jean pleaded guilty to counts one and three without a plea agreement. ROA.472, 939. For the § 924(c)(1) offense charged in count three, the probation office determined that Jean was a career offender under U.S.S.G. § 4B1.1 because the offense of conviction involved a controlled-substance offense and Jean, while 18 years or older, had three qualifying Texas convictions for controlled-substance offenses. ROA.943. Jean's

resulting advisory guidelines range was 352-425 months' imprisonment. ROA.952. At sentencing, the district court sentenced Jean to a total of 292 months' imprisonment (232 months on count one and 60 months on count three, to be served consecutively) — "a great variance below the guidelines." ROA.161-62, 862. The district court entered judgment on October 1, 2009. ROA.161-62. Jean appealed. ROA.172-73. This Court dismissed the appeal as frivolous. ROA.187-88.

**B.**    **Jean seeks relief under 28 U.S.C. § 2255, arguing in part that his sentence was unlawful because he should not have qualified as a career offender under the guidelines based on intervening court decisions.**

In 2012, Jean filed a motion to correct, set aside, or vacate his sentence under 28 U.S.C. § 2255. ROA.393. The § 2255 proceeding had a long and tortuous history, but for relevant purposes here, in 2017 — some five years after he originally filed his motion but before it was decided — Jean argued in a supplemental pleading that the sentencing court erred in concluding that he was a career offender under U.S.S.G. § 4B1.1 based on *Mathis v. United States*, 579 U.S. 500 (2016), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) (among other authorities). Dkt. No. 76, in *Jean v. United States*, No. 1:12-cv-00111-MJT-ZJH, E.D. Tex. ("2255 Case"), at 1-3[1]; ROA.394.

---

[1] The government respectfully asks the Court to take judicial notice of the docket and pleadings in Jean's civil § 2255 proceeding, which both parties

According to Jean, under those intervening decisions, "at least two" of his prior Texas convictions for drug-related offenses should not have counted as predicates because they were broader than the generic drug crime, and so his sentence was "against the laws and Constitution of the United States." 2255 Case, Dkt. No. 76, at 1-2. Jean claimed that he had "attempted to preserve this error at the District Court proceeding and on appeal but was prevented" from doing so by his then-attorney. *Id*. at 2.

In 2021 — around nine years after Jean filed his § 2255 motion — the magistrate judge issued a report and recommendation that the motion and all amendments/supplements to it be denied. The magistrate judge determined that Jean's *Mathis/Hinkle* argument was "barred by the one-year statute of limitations" and that there was no basis to apply 28 U.S.C. § 2255(f)(3) because "*Mathis* and *Hinkle* did not announce a new rule and have not been made retroactively applicable to cases on collateral review[.]" 2255 Case, Dkt. No. 90, at 16-18. The magistrate judge further noted that this Court had then-recently held, in *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017), "that the Texas crime of possession with intent to deliver a

referred to below. ROA.393-95, 520; Fed. R. Evid. 201; *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) ("A court may . . . take judicial notice of its own records or those of inferior courts"); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER").

controlled substance does not count as [a] 'controlled substance offense' for purposes of the career offender provision of the Sentencing Guidelines." *Id.* at 17-18. But the magistrate judge concluded that *Tanksley*, too, was of no help to Jean because any claim based on it would be time-barred and not cognizable in a § 2255 proceeding because it involved an alleged misapplication of the guidelines and could have been raised on direct appeal. *Id.* The magistrate judge did not address the ineffective-assistance-of-counsel claim that Jean had raised in connection with his *Mathis/Hinkle* argument. 2255 Case, Dkt. No. 76, at 2, 3.

On February 1, 2023, the district court (Truncale, J.) adopted the report and recommendation, denied Jean's § 2255 motion in full, and declined to issue a certificate of appealability. 2255 Case, Dkt. No. 99.

**C.    Jean moves for compassionate release under § 3582(c)(1)(A), arguing that extraordinary and compelling reasons for his release existed because he would not qualify as a career offender today under intervening court decisions and because of his rehabilitation.**

On November 21, 2022 — around 19 months after the magistrate judge had recommended that Jean's § 2255 motion be denied — Jean filed a pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). ROA.270-303. He argued that the "change in law" brought by *Mathis/Hinkle/Tanksley*, though not "deemed

retroactive," "along with his demonstrated rehabilitative progress and outstanding disciplinary record, warrant[ed] a reduction to time-served[.]" ROA.270. Attorneys later appeared on Jean's behalf and moved to withdraw Jean's pro se filing in lieu of a lawyer-drafted one. ROA.362-64. The district court granted the request. ROA.377.

In his new motion Jean argued that extraordinary and compelling reasons supported a sentence reduction for three reasons.[2] *First*, he contended, just as he did in his § 2255 proceeding, that he would not qualify as a career offender "under current law" based on *Mathis/Hinkle/Tanksley*. ROA.547-48. He elaborated that because "today's sentencing scheme no longer warrants a Career Offender enhancement for someone like Jean, the sheer length of the sentence it produced is extraordinary and disparate." ROA.548. *Second*, Jean

---

[2] Jean asserted in his amended motion that the sentencing court (Clark, J.) "sentenced Jean to 232 months for the conspiracy drug offense, reflecting a small downward adjustment to address 'excessive disparity,' although noting its hands were tied due to the Career Offender statute." ROA.547. It's true that at sentencing that the judge repeatedly referred to the "career offender statute[s]" and said that "I've got to take into account the congressional intent in the career offender statute and Congress's intent of, yes, imposing very strict sentences, so the adjustment is not going to be great." ROA.808-10. Yet it's unclear what statute(s) the judge was referring to. Jean was not convicted under the Armed Career Criminal Act, 18 U.S.C. § 924(e). 2255 Case, Dkt. No. 90, at 16. Nor should the judge have felt constrained by 28 U.S.C. § 994(h), for "[b]y its terms, that subsection tells the Sentencing Commission, not the courts, what to do." *United States v. Michael*, 576 F.3d 323, 327-28 (6th Cir. 2009). Under *United States v. Booker*, 543 U.S. 220 (2005), the district court was not bound by the advisory guidelines range produced through operation of U.S.S.G. § 4B1.1, ROA.943, and indeed, the 292-month sentence it imposed was "a great variance below the guidelines." ROA.161-62, 862.

argued that extraordinary and compelling reasons existed because his sentence was longer than the sentences his codefendants and others "convicted of more heinous offenses" received. ROA.548-550. *Third*, Jean argued that his "post-sentencing conduct and rehabilitation support a conclusion that extraordinary and compelling reasons exist to release him on time served." ROA.551.

In its response, the government pointed out that Jean failed to show that he suffered the sort of personal hardships, unique to him, of the type described by the policy statement and commentary set forth in U.S.S.G. § 1B1.13, which while not binding for prisoner-filed motions remains informative. ROA.394-96. The government further argued that Jean, through his § 3582(c)(1)(A) motion, sought to bring "claims that have been litigated and denied" by the court in Jean's § 2255 proceeding — namely, that Jean should benefit from intervening changes in the sentencing law. ROA.395.

The government later filed a notice of supplemental authority, considered by the district court over Jean's objection, ROA.827-28, arguing that this Court's decision in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), supported the government's arguments because it held (1) "that a prisoner cannot use § 3582(c) to challenge the legality of duration of his sentence"; and (2) that "prisoners can seek relief under § 3582(c)(1) only when they face some

extraordinarily severe exigency, not foreseeable at the time of sentencing, *and unique to the life of the prisoner*." ROA.408-09 (quoting *Escajeda*, 58 F.4th at 186) (emphasis in notice). The government noted that Jean's situation was not unique because many other prisoners are serving a sentence that might not be imposed today and that circuits that this Court joined in *Escajeda* have held that a non-retroactive change in law can't be an extraordinary and compelling reason for a sentence reduction as a matter of law under § 3582(c)(1)(A). ROA.408-09.

After a hearing, the district court granted Jean's motion for compassionate release. The court noted that if Jean "were sentenced in today's post-*Hinkle* and *Tanksley* world, for the exact same conduct, he would not be sentenced as a career offender" and would thus receive a lower sentence. ROA.471. And while the court recognized that nonretroactive changes in sentencing law are neither unusual nor unique to the life of the prisoner, it nevertheless found that such changes "may constitute extraordinary and compelling reasons warranting compassionate release when other factors, such as the defendant's rehabilitation, are also present." ROA.471.[3] To that end, the court found that "[w]hile neither are sufficient on their

---

[3] The district court rejected Jean's argument that he should get a sentence reduction because his codefendants and others convicted of "more heinous" crimes got lower sentences. ROA.472-73.

own, Mr. Jean's long comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law together constitute compelling and extraordinary reasons warranting compassionate release." ROA.475. The court went on to find that "the relevant sentencing factors provided by 18 U.S.C. § 3553(a)" were "consistent" with granting Jean's motion. ROA.476-77. Accordingly, the court granted the motion and entered an amended judgment for a time-served sentence. ROA.477-85.

The government timely moved the court to stay its order and amended judgment and to reconsider its decision. ROA.486-89. We pointed out that the decision conflicted with this Court's then-published decision in *United States v. McMaryion*, 64 F.4th 257 (5th Cir. 2023),[4] which held that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id.* at 259. We further argued that just as nonretroactive

---

[4] *McMaryion* was originally published, but the panel later withdrew the opinion and substituted it for an unpublished one. *United States v. McMaryion*, 2023 WL 4118015 (5th Cir. June 22, 2023). Seemingly the decision to unpublish was because the panel majority had originally held that the district court's perfunctory denial of McMaryion's compassionate-release motion was sufficient, *McMaryion*, 64 F.4th at 260-63, but in the revised opinion the majority found that the case should be remanded for a fuller explanation. *McMaryion*, 2023 WL 4118015, at *2. The district court (and Jean himself) recognized that the revised opinion did not change the panel's discussion of the issue relevant here. ROA.517, 530.

legislative changes do not qualify as extraordinary and compelling reasons, neither do intervening court decisions. ROA.487-88 (citing cases). The next day the court granted the government's motion and stayed its decision until further order and until Jean could respond. ROA.491.

After the motion for reconsideration was fully briefed, ROA.492-98, 502-11, 517-28, the court denied the motion, ROA.529-31. It concluded that *McMaryion* did not apply because it involved a nonretroactive statutory change whereas this case involved a nonretroactive change in the caselaw. ROA.530. The court further noted that the intervening changes brought by *Hinkle* and *Tanksley* only formed "one small part" of its decision to grant Jean's motion for compassionate release. ROA.530. Rather, the court explained that its decision was primarily motivated by its finding that Jean "radiated a renewed and rehabilitated outlook on life to an extent that the Court had never seen from a criminal defendant." ROA.530. The court ordered Jean released on August 14, 2023. ROA.531. The government timely noticed an appeal. ROA.532-33.

In *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), this Court held that a prisoner cannot use the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), to "challenge the legality of duration of his sentence"; to "steer[]" around the procedural limitations of 28 U.S.C. § 2255; or to get relief for situations that are not unique to the life of the prisoner. *Id.* at 186, 187.

Jean tried to use § 3582(c)(1)(A) to do all of those things. First, he effectively challenged the legality of his sentence by implying that the sentence he received was unlawful because it would be lower if he were sentenced today. Second, he argued that the "sheer length" of his sentence was extraordinary. Third, after the magistrate judge found that § 2255's procedural roadblocks squelched Jean's argument, made in his § 2255 proceeding, that his sentence was unlawful based on intervening court decisions, Jean turned around and made basically the same argument via the compassionate-release statute. And fourth, Jean argued that his sentence would be different today based on nonretroactive changes in sentencing law, even though his situation was nowise unique to him.

Jean's compassionate-release motion thus violated *Escajeda* in nearly every possible way, yet the district court granted it. Though the court recognized that while neither intervening changes in the

sentencing law nor the prisoner's rehabilitation, alone, were sufficient to reach the extraordinary and compelling threshold, it concluded that the two could combine to reach it.

The district court erred as a matter of law in so finding. This Court has held in an unpublished opinion that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *United States v. McMaryion*, 2023 WL 4118015, *2 (5th Cir. June 22, 2023). And Congress has dictated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Two legally insufficient reasons can't combine to become sufficient. This Court should reverse.

## Standard of Review

This Court reviews "the ultimate decision to deny compassionate release for abuse of discretion." *Escajeda*, 58 F.4th at 186. But "a court abuses its discretion if it bases its decision on an error of law[.]" *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Here the government contends that the district court committed an error of law by finding that extraordinary and compelling reasons existed through the combination of nonretroactive changes in sentencing law and the defendant's alleged post-sentencing rehabilitation. So review is effectively de novo. *See McMaryion*, 2023 WL 4118015, at *1 ("We review questions of law de novo and the ultimate decision to deny compassionate release for abuse of discretion").

## Discussion

Section 3582(c)(1)(A) of Title 18 governs the so-called "compassionate release" of defendants serving federal sentences. In the First Step Act of 2018, Pub. L. No. 115-391, Title VI, § 603(b)(1), 132 Stat. 5239, Congress amended § 3582(c)(1)(A) to allow inmates — not just the Bureau of Prisons, as had previously been the case — to file motions for a reduced sentence. Under § 3582(c)(1)(A), a court "may reduce" a defendant's sentence if (1) "extraordinary and

compelling reasons warrant such a reduction"; (2) the "factors set forth in [18 U.S.C. §] 3553(a)" support such a reduction, and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). At the time of this writing, there is no policy statement applicable to prisoner-filed motions, *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021), though that may change come November 1, 2023.[5]

Here the district court cited two reasons that it believed, taken "together," rose to the level of extraordinary and compelling: (1) that Jean would not be subject to a career-offender enhancement under

---

[5] Assuming that Congress does not act within about a week of this filing, a new policy statement on compassionate release will take effect on November 1. 88 Fed. Reg. 28,254 (May 3, 2023). That policy statement provides that "[i]f a defendant received an unusually long sentence" — whatever that means — and has served "at least 10 years" of it, a district court "may" consider changes in the law as part of the "extraordinary and compelling" reasons analysis, but "only" where the change would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and only after "full consideration" of the defendant's "individualized circumstances." 88 Fed. Reg. 28,255. The new policy statement has no bearing on this appeal because the district court granted Jean's compassionate-release motion before the new statement would go into effect, and the court did not rely on the new statement in its decision. *See United States v. Wilson*, 77 F.4th 837, 841-42 (D.C. Cir. 2023) (declining to decide whether the defendant's "contentions would constitute extraordinary and compelling reasons under the not-yet-effective guidelines"); *United States v. Elam*, 2023 WL 6518115, *2 (5th Cir. Oct. 5, 2023) (noting the new policy statement but "express[ing] no view" on whether any new motion for compassionate release filed by the defendant would be granted). That said, nothing prevents Jean from filing another motion under § 3582(c)(1)(A) if the new policy statement takes effect.

the advisory guidelines if he were sentenced today; and (2) his alleged post-sentencing rehabilitation. ROA.475.

This Court's decision in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), forecloses reliance on the first of those reasons. It held that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence; such arguments can, and hence must, be raised under Chapter 153 [of Title 28]," providing "specific avenues for post-conviction relief that permit prisoners to challenge the legality of their confinement in federal court." *Id.* at 186-87. In other words, compassionate release can't be used as a way to "steer[] around [28 U.S.C. § 2255's] strictures" to correct sentencing errors. *Id.* at 187.

But Jean, through his § 3582(c)(1)(A) motion, sought to do just that. After all, Jean argued in his § 2255 proceeding that his classification as a career offender was "against the laws and Constitution of the United States" based on *Mathis* and *Hinkle*, and the district court rejected that argument in part because of § 2255's "strictures" — namely, the statute's one-year limitations period and principles of procedural default. *See above* at pp. 3-5; *United States v. Jenkins*, 50 F.4th 1185, 1201 (D.C. Cir. 2022) (explaining that doctrines of "retroactivity limits and exceptions", "procedural-default rules and exceptions", and "a statute of limitations and exceptions"

applicable to collateral review reflect Congress and the Supreme Court's effort to carefully balance "the government's interest in finality and the defendant's interest in obtaining relief from an unlawful sentence").

Having struck out in his § 2255 proceeding based on that statute's "strictures," Jean tried to "steer" around them by filing a motion under § 3582(c)(1)(A), in which he again argued that he should get a sentence reduction because under *Hinkle* and *Tanksley* he would not qualify as a career offender if sentenced today. ROA.545, 547-48. Jean thus violated the "habeas-channeling rule" described in *Escajeda*, which "forecloses using compassionate release to correct sentencing errors."[6] *Escajeda*, 58 F.4th at 187 (cleaned up); *Jenkins*, 50 F.4th at 1201 (explaining that compassionate release

---

[6] Jean's compassionate-release motion was "based on an argument generally available to litigants on direct appeal or (more properly) in plea negotiations and at the time of the original sentencing." *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022); *Escajeda*, 58 F.4th at 187 ("Escajeda's claims are the province of *direct appeal* or a § 2255 motion, not a compassionate release motion") (emphasis added). After all, "nothing prevented him" from arguing that some or all of his prior convictions came under a provision of Texas law "that was too broad to enhance his federal sentence." *Brock*, 39 F.4th at 465; *Mathis*, 579 U.S. at 519 (the divisibility rule announced in *Mathis* was not new: the *Mathis* opinion is clear that the Supreme Court believed its conclusion was compelled by "more than 25 years" of its precedents). Indeed, Jean asserted under penalty of perjury in his § 2255 proceeding that he had perceived of the claim during his criminal case and on direct appeal — before *Mathis/Hinkle/Tanksley* — but that his attorney "prevented" him from raising it. 2255 Case, Dkt. No. 76, at 2, 3, 5.

cannot be used "to end-run" the procedural limitations inherent in collateral-review proceedings).

The district court thought that *Escajeda* didn't apply because "[u]nlike the prisoner in *Escajeda*, Mr. Jean does not argue that his confinement is unlawful, he argues that extraordinary and compelling reasons warrant a reduction of his otherwise lawful sentence." ROA.475. But any argument "that an intervening change to sentencing law provides an extraordinary and compelling reason for early release necessarily implicates the validity of the relevant sentence."[7] *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2002) (en banc). That's because "[i]f someone like [Jean] were to prevail on his [*Hinkle/Tanksley*] claim, a court would alter the duration of his sentence because his sentence would be different today, thereby implying the unlawfulness of his sentence as originally imposed." *Id.* Put another way, in granting Jean's motion the district court necessarily concluded that Jean's "sentence was unlawfully imposed. Otherwise, what could possibly be extraordinary and

---

[7] The district court said that Jean was not arguing that his original sentence was unlawful, ROA.475, but that instead his argument was that he "received a punishment that courts subsequently determined was not ordained by Congress." ROA.530. But the court — the same one that decided Jean's § 2255 motion — overlooked that Jean had argued in his § 2255 proceeding that his classification as a career offender under the advisory guidelines was "against the laws and Constitution of the United States", *see above* at 3-5. And Jean raised the same argument in his § 3582(c) motion under the guise of compassionate release.

compelling about an intervening judicial decision confirming that a sentence was lawfully imposed . . . ?" *Jenkins*, 50 F.4th at 1204.

Along the same lines, the district court misunderstood *Escajeda*'s point that a prisoner "cannot use § 3582(c) to challenge the . . . *duration* of his sentence[.]" *Escajeda*, 58 F.4th at 187 (emphasis added). The district court was sold on Jean's argument that "[b]y definition, ***all*** compassionate release motions seek to modify the duration of a sentence; that is the very purpose of the statute." ROA.475-76 (quotation marks omitted) (emphasis in original). The court said that "[a]dopting the Government's interpretation of *Escajeda* would nullify section 3582(c)." ROA.476. It would not. Obviously all inmates who file compassionate-release motions want a lower sentence. But *Escajeda*'s point was that the *ground* for relief raised under § 3582(c)(1)(A) must be something other than that the sentence the prisoner received was too long. *Escajeda*, 58 F.4th at 187; *cf. United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("[W]e are saying that the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance").

Yet that's exactly what Jean argued in his § 3582 motion. He complained that because "today's sentencing scheme no longer

warrants a Career Offender enhancement for someone like Jean, *the sheer length* of the sentence it produced is extraordinary and disparate[.]" ROA.548 (emphasis added).

In contrast, the type of challenge that *Escajeda* said *can* be made under § 3582(c)(1)(A) is one that Jean didn't make — that he "face[d] some extraordinary exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186 (explaining that that's why § 3582(c)(1)(A)'s commonly called "compassionate release" — because "courts generally use it for prisoners with severe medical exigencies or infirmities"); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (explaining that the policy statements "contemplate the release of prisoners afflicted by severe medical conditions or risks, experiencing a family emergency, or otherwise in unusual personal circumstances. They do not hint that the sort of legal developments routinely addressed by direct or collateral review qualify a person for compassionate release").

The district court was correct to recognize as it did that being affected by a nonretroactive change in sentencing law is not unique to Jean; "it affects all prisoners sentenced under the prior law." ROA.471; *Jenkins*, 50 F.4th at 1202 ("because courts cannot pick needles from haystacks *ex ante*, finality would be undermined whenever any judicial decision, rendered any time after a sentence

has become final on direct review, at least arguably calls the sentence into question"); *King*, 40 F.4th at 595 (explaining that "[t]here's nothing 'extraordinary' about new . . . caselaw[];" such is "the ordinary business of the legal system").

Yet the court went awry in trying to explain why Jean's compassionate-release motion should be granted anyway. It said that the new caselaw played only "one small part" in its decision. ROA.530; *cf. Jenkins*, 50 F.4th at 1202 ("it is no answer to say that intervening judicial decisions may be considered only as one factor among many"). But the only other part was Jean's alleged post-sentencing rehabilitation. ROA.530 (finding that "Jean radiated a renewed and rehabilitated outlook on life to an extent that the Court had never seen from a criminal defendant"). The district court recognized, as it must, that it could not legally grant Jean's motion on rehabilitation alone, either, given 28 U.S.C. § 994(t). ROA.475. So it determined that "[w]hile neither" changes in the sentencing law nor rehabilitation were sufficient on their own, "Mr. Jean's long comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law together constitute compelling and extraordinary reasons warranting compassionate release." ROA.475.

But two independently insufficient reasons can't become sufficient when combined.[8] *See United States v. Wilson*, 77 F.4th 837, 842 (D.C. Cir. 2023) ("But intervening judicial decisions, regardless of whether they are combined with other factors, are barred as extraordinary and compelling bases for relief"); *Jenkins*, 50 F.4th at 1202 ("if an intervening judicial decision by itself could never support compassionate release," neither can it do so "when combined with other 'insufficient factual considerations'") (quoting *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021)); *McCall*, 56 F.4th at 1066 (rejecting the argument that a nonretroactive change in the law "when combined with COVID-19 and [a defendant's] rehabilitative efforts" creates an "extraordinary and compelling reason" for a sentence reduction). Under these circumstances, zero plus zero equals zero.[9]

---

[8] The district court recognized as much, noting that rehabilitation can only be a factor when combined with some "otherwise qualifying condition." ROA.475 (cleaned up).

[9] Jean argued below that the Seventh Circuit, in *United States v. Vaughn*, 62 F.4th 1071 (7th Cir. 2023) (Easterbrook, J.), "held" that "district courts should consider extraordinary and compelling reasons 'jointly as well as severally,' as multiple reasons may collectively serve as grounds for relief even if none of them does so independently." ROA.526. *Vaughn*, however, was simply trying to caution courts against "compartmentalizing" evidence by asking "whether a piece of evidence 'by itself' passes some threshold" — in the § 3582(c)(1)(A) context, whether evidence of a prisoner's unique situation is sufficiently extraordinary and compelling to warrant relief. *Vaughn*, 62 F.4th at 1072. *Vaughn* explained that "no matter how the threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not." *Id.* at 1073. But that's only true insofar as a particular factor *may legally be considered at all*, and

The district court also took an overly narrow view of this Court's decision in *McMaryion*, which held that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *McMaryion*, 2023 WL 4118015, at *2.[10] The district court

*Vaughn* pointed out that the Seventh Circuit had earlier, in *United States v. Brock*, 39 F.4th 462 (7th Cir. 2022) (discussed *infra*), held that an intervening judicial decision "does not justify compassionate release as an indirect means to achieve retroactive application of that decision." *Vaughn*, 62 F.4th at 1073 (citing *Brock*, 39 F.4th at 464-64).

Indeed, Judge Easterbrook himself, in *King*, explained that "[w]hen deciding whether 'extraordinary and compelling reasons' . . . justify a prisoner's compassionate release, judges *must not rely* on non-retroactive statutory changes *or new judicial decisions*." *King*, 40 F.4th at 595 (emphasis added). If something cannot be relied on at all it can never pile on top of other things that can be considered. *McCall*, 56 F.4th at 1066 ("non-retroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop."). And here the "other thing" the district court considered was Jean's alleged rehabilitation, which is something that can't, as a matter of law, alone be considered as extraordinary and compelling. 28 U.S.C. § 994(t). The government thus disagrees with *Vaughn*'s math that "[o]ften 0 + 0 = 0. But not always." *Vaughn*, 62 F.4th at 1072. It always equals zero, but *Vaughn*'s basic principle — that non-zero factors can be cumulated to reach some defined threshold is correct.

[10] We recognize that there's a circuit split on this question. *Compare United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc); *United States v. Jenkins*, 50 F.4th 1185, 1198-99 (D.C. Cir. 2022); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) *with United States v. Chen*, 48 F.4th 1092, 1098-99 (9th Cir. 2022); *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). But the circuits that this Court decided to join in *Escajeda* for the principle that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence" are all ones on the first side of the ledger. *Escajeda*, 58 F.4th at 187-88; *see also McMaryion*, 2023 WL 4118015, at *2 (relying on *Jenkins*, 50 F.4th at 1198-1200 & *McCall*, 56 F.4th at 1065-66).

said that *McMaryion* didn't apply because its holding was limited to consideration of non-retroactive changes in *statutory law*, whereas Jean urged the court to consider non-retroactive changes in *case law*. ROA.530.

But *McMaryion* itself didn't so limit its holding.[11] And the two decisions that *McMaryion* relied on for the principle that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion" — *Jenkins* (D.C. Circuit) and *McCall* (the en banc Sixth Circuit) — concluded that intervening judicial decisions, just as statutory changes, do not constitute extraordinary and compelling reasons for compassionate release as a matter of law. *McMaryion*, 2023 WL 4118015, at *2. And three of the circuits that this Court "join[ed]" in *Escajeda* for the principle that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence" — the D.C. (*Jenkins*), Seventh (*King*), and Sixth (*Hunter*) Circuits — all held the same, as we'll explain. *Escajeda*, 58 F.4th at 187-88.

Start with *McCall*. There the en banc Sixth Circuit saw "no reason to take a different approach" in a case that "involves a

_____

[11] While it's certainly true that separation-of-powers concerns motivated the *McMaryion* panel's reasoning in part, the panel *also* determined that its holding was dictated by the more general principle that nonretroactive changes "in criminal law" are not, as a legal matter, extraordinary and compelling. *McMaryion*, 2023 WL 4118015, at *2.

nonretroactive judicial decision, rather than a nonretroactive statute." *McCall*, 56 F.4th at 1057. *McCall's* a mirror image of this case. McCall moved for a sentence reduction under § 3582(c)(1)(A) based on an intervening Sixth Circuit decision, *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), which "held that attempted drug-trafficking offenses are not controlled substance offenses sufficient to trigger the career-offender enhancement." *McCall*, 56 F.4th at 1050-51. *Havis* thus stood in the shoes of *Hinkle* and *Tanksley* here, which similarly held that certain Texas drug offenses failed to qualify as predicate offenses under the career-offender guideline. Both McCall and Jean argued that if sentenced today they would receive a lower sentence based on intervening case law. The *McCall* court rejected this argument because "background principles of federal sentencing law" — finality and nonretroactivity — led it to conclude that a nonretroactive court decision is neither "extraordinary" nor "compelling." *McCall*, 56 F.4th at 1055-57. The application of "new statutes *and caselaw* . . . only to 'defendants not yet sentenced' is the expected outcome in our legal system." *Id.* (emphasis added) (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)); *McMaryion*, 2023 WL 4118015, at *2 ("[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already

sentenced") (also quoting *Dorsey*) (cleaned up). "And what is expected cannot be extraordinary." *McCall*, 56 F.4th at 1056. Nor is it "compelling" for a defendant to serve the duration of a lawfully imposed sentence. *Id.*

Same goes for the Sixth Circuit's decision in *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021), which this Court joined in *Escajeda*. *Escajeda*, 58 F.4th at 187-88. *Hunter* said that "[t]he vague and amorphous phrase 'extraordinary and compelling reasons' in a narrow sentence reduction statute does not remotely suggest that Congress intended to effect the monumental change of giving district courts the discretion to treat non-retroactive precedent as a basis to alter a final judgment (and release a prisoner)." *Hunter*, 12 F.4th at 566. So there "is no reason to take a different approach" when a case involves "non-retroactive precedent, as opposed to statutes." *Id.* at 564.

Another decision that this Court joined in *Escajeda* and relied on in *McMaryion* was the D.C. Circuit's decision in *Jenkins*, which held that an inmate can't rely on an intervening "judicial construction" of the career-offender guideline to get relief under § 3582(c). *Jenkins*, 50 F.4th at 1200-01. *Jenkins* concluded that "legal errors at sentencing — including those established by retroactive

application of intervening judicial decisions — cannot support a grant of compassionate release." *Id.* at 1200.

Then there's the Seventh Circuit's decision in *United States v. Brock*, 39 F.4th 462 (7th Cir. 2022).[12] There, an inmate argued that an intervening court decision — the Seventh Circuit's decision in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) — "changed the law [] by reinterpreting a definition in the federal drug statutes" in a way that would result in a lower sentence if the defendant were sentenced today. *Brock*, 39 F.4th at 463-64. The Seventh Circuit rejected the argument, finding it "foreclose[d]" by the "principle" articulated by its decision in *United Sates v. Thacker* — which held that nonretroactive statutory changes that the First Step Act made to § 924(c) did not constitute extraordinary and compelling reasons under the compassionate-release statute. *Thacker*, 4 F.4th at 574-75. *Thacker* thus involved nonretroactive *statutory* changes, yet the Seventh Circuit, in *Brock*, determined that *Thacker* "foreclose[d]" the argument that changes in the criminal law brought by intervening *judicial decisions* can constitute extraordinary and compelling circumstances. So just as *Thacker* (a statutory case) "foreclosed" the

_____

[12] *Brock* was not cited by this Court in *Escajeda*, but the Seventh Circuit's decision in *King* was one of the decisions this Court joined, *Escajeda*, 58 F.4th at 187-88, and *Brock* is consistent with *King*. *King*, 40 F.4th at 595 (holding that judges "must not rely on . . . new judicial decisions" in deciding whether extraordinary and compelling reasons justify compassionate release).

argument in *Brock* (a judicial-decision case), *Escajeda* and the logic of *McMaryion* foreclose Jean's argument here.

CONCLUSION

This Court should reverse the district court's order granting Jean's motion for compassionate release and vacate the amended judgment awarding a time-served sentence.

Respectfully submitted,

Damien M. Diggs
United States Attorney
Eastern District of Texas

*/s/ Bradley Visosky*
Bradley Visosky
Assistant U.S. Attorney
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Telephone: (972) 509-1201

Attorneys for the United States

## Certificate of Service

I certify that on October 23, 2023, a copy of this brief was electronically served on counsel for the appellee through use of the Court's ECF system.

*/s/ Bradley Visosky*
Bradley Visosky

# Certificate of Compliance

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(f). It contains 6,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(g) and the type style requirements of Fed. R. App. P. 32(a)(6). It was prepared using Microsoft Word for Office 365 in a proportionally spaced typeface in 14-point size, with footnotes in 12-point size.

/s/ *Bradley Visosky*
Bradley Visosky