# United States Court of Appeals
# for the Fifth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

JOEL FRANCOIS JEAN,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:08-CR-101-1

---

**BRIEF FOR APPELLEE JOEL FRANCOIS JEAN**

---

JEANNE M. HEFFERNAN
jheffernan@kirkland.com
NADIA E. HAGHIGHATIAN
nadia.haghighatian@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, Texas 78701
(512) 678-9100

*Counsel for Appellee*
*Joel Francois Jean*

December 12, 2023

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

Appellee:

Joel Francois Jean

Attorneys for Appellee:

Jeanne M. Heffernan
Nadia E. Haghighatian
Kirkland & Ellis LLP
401 Congress Avenue
Austin, Texas 78701
(512) 678-9100

*s/ Jeanne M. Heffernan*
Jeanne M. Heffernan
jheffernan@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, Texas 78701
(512) 678-9100

*Counsel for Appellee*
*Joel Francois Jean*

**STATEMENT REGARDING ORAL ARGUMENT**

Appellee Joel Francois Jean respectfully requests oral argument to aid this Court in rendering its decision. *See* Fed. R. App. P. 34(a)(2)(C). This appeal presents important questions about a district court's authority to define "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Oral argument will ensure a full and fair adjudication of the questions presented in this appeal and assist the Court in evaluating the various grounds for affirmance.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS............................................................ i

STATEMENT REGARDING ORAL ARGUMENT................................................. ii

TABLE OF AUTHORITIES.................................................................................. v

INTRODUCTION ................................................................................................. 1

JURISDICTIONAL STATEMENT ....................................................................... 2

STATEMENT OF THE ISSUES ........................................................................... 2

STATEMENT OF THE CASE................................................................................ 3

I. The Conviction and Sentence. .................................................................... 3

II. Jean's § 2255 Motion.................................................................................. 4

III. Legal Changes ............................................................................................ 6

IV. The Sentence Reduction. ............................................................................ 7

V. The Government's Request for Reconsideration........................................... 8

SUMMARY OF ARGUMENT............................................................................... 9

STANDARD OF REVIEW ................................................................................... 9

ARGUMENT ........................................................................................................ 9

I. Extraordinary and Compelling Reasons Support Reduction........................ 10

II. *McMaryion* Does Not Foreclose Considering Jurisprudential
Changes.....................................................................................................11

    A. *McMaryion* Is Unpublished and Not Precedential in This
Court...............................................................................................11

    B. This Court Should Decline to Follow *McMaryion*. ........................... 12

        1. *McMaryion* is inconsistent with the statutory text and
legislative history of § 3582(c)(1)(A). ..................................... 12

2. *McMaryion* conflicts with *Concepcion*................................... 14

3. *McMaryion* conflicts with the amended policy statement. ................................................................ 16

C. *McMaryion* Is Distinguishable from Jean's Case. ........................... 18

1. *McMaryion* addressed changes in *statutory* law..................... 18

2. *McMaryion* did not address consideration of jurisprudential changes *in combination* with other individual circumstances......................................... 22

III. The District Court Did Not Err in Concluding *Escajeda* Does Not Bar Jean's Motion for Compassionate Release. .......................... 23

A. *Escajeda* Stands Only for the Proposition That Claims Cognizable Under 28 U.S.C. § 2255 Cannot Be Brought under § 3582(c)(1)(A). ....................................................... 23

B. The Government Previously Argued Jean's Claims Are Not Cognizable Under § 2255.................................................. 26

C. Jean's § 3582(c)(1)(A) Motion Did Not Argue, and the District Court Did Not Conclude, Jean's Sentence Was Unlawful. ....................................................................... 27

IV. Jean Demonstrated Extraordinary and Compelling Reasons. ..................... 30

CONCLUSION ..................................................................... 30

CERTIFICATE OF SERVICE .................................................. i

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .................. ii

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Concepcion v. United States*,
597 U.S. 481 (2022).................................................................12, 14, 15

*Dorsey v. United States*,
567 U.S. 260 (2012).............................................................................14

*Kimbrough v. United States*,
552 U.S. 85 (2007)...............................................................................13

*McMaryion v. United States*,
– F.4th –, 2023 WL 2658434 (5th Cir. 2023)....................................19

*Plumley v. Austin*,
574 U.S. 1127 (2015) (Thomas, J., dissenting) ................................12

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)...............................................................................13

*United States v. Andrews*,
12 F.4th 255 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446 (2022)....................10

*United States v. Aruda*,
993 F.3d 797 (9th Cir. 2021) (per curiam) ........................................10

*United States v. Brooker*,
976 F.3d 228 (2d Cir. 2020) .........................................................10, 13

*United States v. Chen*,
48 F.4th 1092 (9th Cir. 2022) .................................................14, 22, 29

*United States v. Cisneros*,
No. 21-40860, 2023 WL 2823903 (5th Cir. Apr. 7, 2023)................19

*United States v. Cooper*,
996 F.3d 283 (5th Cir. 2021) ...............................................9, 11, 12, 25

*United States v. Cooper*,
No. CR H-09-132-1, 2021 WL 5027498 (S.D. Tex. July 15, 2021) .................25

*United States v. Crandall,*
    25 F.4th 582 (8th Cir. 2022) ...............................................................24

*United States v. Escajeda,*
    58 F.4th 184 (5th Cir. 2023) ...................................................*passim*

*United States v. Gunn,*
    980 F.3d 1178 (7th Cir. 2020) ...........................................................10

*United States v. Hinkle,*
    832 F.3d 569 (5th Cir. 2016) ...................................................*passim*

*United States v. Hurst,*
    No. 22-20544, 2023 WL 3197048 (5th Cir. May 2, 2023) .........................19, 20

*United States v. Jackson,*
    27 F.4th 1088 (5th Cir. 2022) ...............................................................9

*United States v. Jenkins,*
    50 F.4th 1185 (D.C. Cir. 2022)..................................................*passim*

*United States v. Jones,*
    980 F.3d 1098 (6th Cir. 2020) ......................................................10, 11

*United States v. King,*
    40 F.4th 594 (7th Cir. 2022) ...............................................................24

*United States v. Long,*
    997 F.3d 342 (D.C. Cir. 2021)...........................................................11

*United States v. Mathis,*
    136 S. Ct. 2243 (2016)...............................................5, 7, 24, 27

*United States v. Maumau,*
    993 F.3d 821 (10th Cir. 2021) ...........................................................25

*United States v. McCall,*
    56 F.4th 1048 (6th Cir. 2022) .....................................................20, 21, 22

*United States v. McCoy,*
    981 F.3d 271 (4th Cir. 2020) ...................................................10, 22, 25

*United States v. McGee*,
   992 F.3d 1035 (10th Cir. 2021) ...................................................10, 22

*United States v. McMaryion*,
   No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023)
   (unpublished) ...............................................................................*passim*

*United States v. Owen*,
   No. 4:17-CR-00106-001, 2021 WL 3603598 (E.D. Tex. Aug. 13,
   2021) ...................................................................................................6

*United States v. Roper*,
   72 F.4th 1097 (9th Cir. 2023) ...................................................28, 29

*United States v. Ruvalcaba*,
   26 F.4th 14 (1st Cir. 2022)................................................10, 13, 22

*United States v. Shkambi*,
   993 F.3d 388 (5th Cir. 2021) .............................................................10

*United States v. Solomon*,
   No. 3:14-cr-00340-K-5, 2023 WL 2920945 (N.D. Tex. Apr. 11,
   2023) ...............................................................................................19, 28

*United States v. Tanksley*,
   848 F.3d 347 (5th Cir. 2017) ....................................................*passim*

*United States v. Trenkler*,
   47 F.4th 42 (1st Cir. 2022).................................................................28

*United States v. Vaughn*,
   62 F.4th 1071 (7th Cir. 2023) ..........................................................23

*Ward v. United States*,
   11 F.4th 354 (5th Cir. 2021) ............................................................11

**Statutes & Guidelines**

18 U.S.C. § 924(c) ..............................................................................4

18 U.S.C. § 3553 ...............................................................................10

18 U.S.C. § 3582(c)(1)(A) ...........................................................*passim*

18 U.S.C. § 3742(b) ........................................................2

28 U.S.C. § 994(t) .............................................12, 15, 17

28 U.S.C. § 2255 ...................................................*passim*

Pub. L. 115-391, 132 Stat. 5194, 5239 ..............................6

USSG § 1B1.13 .......................................................*passim*

USSG § 4B1.1 ...............................................................1, 4

**Rules**

5th Cir. R. 47.5.4 ........................................................11

**Other Authorities**

S. Rep. No. 98-225 (1983) ....................................13, 14, 17

\* Unless otherwise indicated, all emphasis is added and all internal quotations and citations have been omitted.

**INTRODUCTION**

In 2008, Joel Francois Jean was arrested and subsequently sentenced to 292 months (more than 24 years) in prison. Roughly half of Jean's then-recommended sentence under the U.S. Sentencing Guidelines ("USSG") was due to a career-offender enhancement under § 4B1.1. Under its authority provided by 18 U.S.C. § 3582(c)(1)(A), the District Court reduced Jean's sentence to time served based on this Court's decisions in *Hinkle* and *Tanksley*[1] (which held prior convictions like Jean's no longer support a career-offender enhancement), in combination with Jean's individualized circumstances, including his extraordinary rehabilitation. The Government does not deny Jean is rehabilitated or that he "would be an excellent candidate for a commutation or pardon." ROA.857:5-6. Still, the Government contends Jean should be imprisoned for another 9 years because the District Court lacked authority to reduce his sentence. The Government's reading of the statutory regime ignores the plain language of § 3582(c)(1)(A), the policy statement in USSG § 1B1.13, and the commentary of the Sentencing Commission ("Commission") on the latter provision. In granting precisely the relief Jean was afforded, a growing number of district courts have rejected the Government's position. Indeed, the Commission recently amended USSG § 1B1.13 to clarify that courts ***are*** permitted

---

[1] *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *United States v. Tanksley*, 848 F.3d 347 (5th Cir. 2017).

to consider changes in law, either alone or in combination with other factors.

The Government casts the authority on which the District Court relied as novel and limitless, trotting out the all-too-familiar trope of the slippery slope. But there is no such danger. As explained below, since the enactment in 1984 of § 3582(c)(1)(A), district courts have possessed precisely the power the District Court exercised in this case: to reduce a sentence where extraordinary and compelling reasons warrant a reduction. It is a narrow but important judicial safeguard Congress specifically created so judges could correct "unusually long sentences" like Jean's. In 2018, for the express purpose of *increasing* the use of § 3582(c)(1)(A), Congress removed a Bureau of Prisons ("BOP") motion as a condition precedent to awarding relief. Thus, the District Court in this case properly exercised its sentence-reducing authority based on a careful evaluation of the individual circumstances of Jean's case. This Court should affirm the order reducing Jean's sentence.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this appeal, but 18 U.S.C. § 3742(b) does not apply because the District Court's judgment was not imposed in violation of law.

## STATEMENT OF THE ISSUES

1.      Whether the District Court correctly concluded that *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023) (unpublished), does not preclude consideration of changes in jurisprudential law to

support a sentence reduction under § 3582(c)(1)(A).

2.     Whether the District Court correctly concluded that Jean's sentence-reduction motion under § 3582(c)(1)(A) was distinct from a motion to vacate under 28 U.S.C. § 2255 and did not violate the habeas-channeling rule.

3.     Whether the District Court acted within its discretion in determining that changes in jurisprudential law in combination with Jean's individual circumstances, including his post-sentencing rehabilitation, constituted extraordinary and compelling reasons supporting a sentence reduction.

## STATEMENT OF THE CASE

### I.     The Conviction and Sentence.

Jean's convictions stem from a 2007 drug-trafficking investigation involving four other defendants. ROA.939-41. Officers were investigating the use of motels to traffic drugs in the Houston, Texas, area and observed the other defendants driving two cars back and forth between a motel and a nearby apartment ("Apartment 167"). ROA.939-40. After officers stopped both vehicles, they discovered cocaine, marijuana, and a firearm. ROA.940-41. Officers then executed a search warrant on Apartment 167, where they found additional firearms. ROA.940. Cooperating witnesses implicated Jean in the drug deal, and were expected to testify that Jean provided the other defendants with the drugs and controlled the contents of Apartment 167. ROA.940. Although Jean was not observed by officers during the

motel investigation, not in the vehicles when officers found the drugs, and not at the apartment when officers found the firearms, Jean nonetheless accepted responsibility for his role. ROA.940-41. Jean pleaded guilty to (1) conspiracy to possess with intent to distribute cocaine and (2) possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c). ROA.161.

While the other defendants received prison sentences ranging from 46 to 120 months (ROA.577-615), Jean's sentence was significantly longer—292 months—due to his classification as a career offender under USSG § 4B1.1. That status was based on three prior Texas state substance abuse convictions. ROA.943. Without the career offender status, Jean's Guideline range would have been 180–210 months (120–150 for the drug offense; 60 for the firearm offense). ROA.625. Instead, with the enhancement, Jean's Guideline range was 352–425 months (292–365 for the drug offense; 60 for the firearm offense). ROA.943, 952. Jean was sentenced to 292 months (232 for the drug offense; 60 for the firearm offense). ROA.162.

## II.    Jean's § 2255 Motion.

On March 5, 2012, Jean moved *pro se* to vacate his sentence under § 2255, primarily based on ineffective assistance of counsel. *See* Dkt. No. 2, in Case 1:12-cv-00111-MJT-ZJH ("2255 Case"), at 3–4.[2] Between 2012 and 2017, Jean and the

---

[2]    Jean's § 2255 proceedings are irrelevant, including because they are not a part of the Record on Appeal. Nonetheless, Jean discusses that motion to address the contradictory positions the Government has taken in opposing Jean's § 2255 and § 3582(c)(1)(A) motions.

Government filed a number of briefs relating to Jean's § 2255 motion, the majority of which were filed prior to the Supreme Court's decision in *United States v. Mathis*, 136 S. Ct. 2243 (2016) and this Court's decisions in *Hinkle* and *Tanksley*. While Jean's later supplemental briefs addressed *Mathis*, *Hinkle*, and *Tanksley*, Jean stated that "all of the claims raised by [him] in the Amended § 2255 Motion and the Supplements thereto relate back to [his attorney's] ineffective assistance." 2255 Case, Dkt. No. 81 at 5; *see also* 2255 Case, Dkt. No. 76 at 3 (seeking to supplement Jean's § 2255 motion "with a claim of ineffective assistance of counsel" for not "challeng[ing] the use of [Jean's] prior state convictions as being ineligible as predicates for sentencing as a career offender"). The Government responded that Jean's *Mathis*/*Hinkle* claims were untimely and not cognizable on collateral review. *See* 2255 Case, Dkt. No. 80 at 3, 8–9.

In 2021, the magistrate judge recommended denying Jean's § 2255 motion. The magistrate judge did not address *Mathis*, *Hinkle*, and *Tanksley* in the context of Jean's ineffective assistance of counsel argument (the core of Jean's § 2255 motion), and instead analyzed whether Jean's claims were time-barred and whether those decisions were substantively applicable on collateral review. 2255 Case, Dkt. No. 90 at 16–18. The District Court entered a memorandum opinion, which adopted the magistrate judge's report and recommendation but did not discuss *Mathis*, *Hinkle*, or *Tanksley*. 2255 Case, Dkt. No. 99.

## III.    Legal Changes

Since Jean's sentencing, drug-sentencing laws changed significantly on both the state and federal levels. ROA.544. Notably, in 2018, President Trump signed the First Step Act ("FSA") into law. With widespread support, the FSA opened many opportunities for people in federal prison, including authorizing inmates to move for compassionate release directly in district court. Before, BOP retained sole gatekeeping authority over compassionate release petitions, resulting in underuse and mismanagement. *See United States v. Owen*, No. 4:17-CR-00106-001, 2021 WL 3603598, at *1 & n.2 (E.D. Tex. Aug. 13, 2021). Through the FSA, Congress sought to "increas[e] the use and transparency of compassionate release." *Id*. (quoting Pub. L. 115-391, 132 Stat. 5194, 5239). President Trump touted that "[t]he First Step Act gives nonviolent offenders the chance to reenter society as productive, law-abiding citizens…. America is a nation that believes in redemption." ROA.544. In a letter to the President, supporters agreed "[t]he sentencing reforms under consideration [in the FSA] [were] designed to ensure that each punishment fits the crime and that taxpayer dollars are not wasted locking up people who pose no threat to public safety." ROA.638. That is precisely what Jean requested below: a sentence reduction to properly fit his circumstances so he could reenter society a changed man.

Significant changes to drug sentencing also came from the courts. In 2016 and 2017, this Court decided *Hinkle* and *Tanksley*, which held (based on the Supreme

Court's 2016 decision in *Mathis*) that prior Texas drug convictions no longer qualify as predicate "controlled substance offenses" supporting a career-offender enhancement. *See Tanksley*, 848 F.3d at 352; *Hinkle*, 832 F.3d at 571.

## IV. The Sentence Reduction.

By January 2023, Jean had served 183 months of his 292-month sentence. All of Jean's co-defendants had already been released—some over 10 years prior. Jean moved for compassionate release based on several factors, including: (1) the sentencing disparity created by the fact that he would not be sentenced as a career offender today after *Hinkle* and *Tanksley*, (2) the sentencing disparities between Jean, his co-defendants, and other defendants convicted of the same or more heinous offenses, and (3) his post-sentencing rehabilitation. ROA.546-51. The Government opposed, arguing Jean did not meet the admittedly non-binding examples in USSG § 1B1.13. ROA.396-97; Gov't Br. at 7. Hours before Jean's hearing, the Government belatedly filed a Notice of Supplemental Authority based on *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023), which had issued two months earlier. ROA.408. The District Court permitted Jean to respond, explaining *Escajeda* does not apply. ROA.413-19.

On May 30, 2023, the District Court granted Jean's motion and reduced his sentence to time served. ROA.468-79. The District Court held "Mr. Jean's long, comprehensive record of rehabilitation and the non-retroactive changes in the

sentencing law together constitute compelling and extraordinary reasons warranting compassionate release." ROA.475. Importantly, the District Court based its holding on changes in **jurisprudential** law stemming from this Court's *Hinkle* and *Tanksley* decisions. ROA.471. As the District Court found, "[i]f Mr. Jean were sentenced in today's post-*Hinkle* and *Tanksley* world, for the exact same conduct, he would not be sentenced as a career offender," and "would be sentenced today to…a total of 160–185 months." ROA.471. In examining Jean's rehabilitation, the District Court afforded significant weight to letters submitted by two BOP officials who strongly supported and encouraged Jean's release (ROA.473-74, 693, 695), as well as Jean's sincere plea regarding his rehabilitation (ROA.474-75, 851-53). As the District Court recounted, "[t]he term 'rare' does not give Mr. Jean's rehabilitation and renewed outlook on life justice—it is wholly extraordinary." ROA.475. For these reasons, the District Court reduced the sentence for Jean to time served. ROA.479.

## V.    The Government's Request for Reconsideration.

The Government moved for reconsideration based on *McMaryion*. ROA.486-87. Following briefing (ROA.492-98, 502-12, 517-28), the District Court denied reconsideration because *McMaryion* is distinguishable. ROA.530 (*McMaryion* involved a statutory change in law **Congress** did not make retroactive, whereas "Jean received a punishment that **courts** subsequently determined was not ordained by Congress"). In addition, the District Court stated its decision "should not be

interpretated as granting compassionate release simply because Mr. Jean received a greater sentence than he would today." ROA.530. Rather, the District Court reiterated it had found extraordinary and compelling reasons based on the change in caselaw *in combination* with Jean's extraordinary rehabilitation. ROA.530-31.

## SUMMARY OF ARGUMENT

The District Court had broad authority to determine what constitutes extraordinary and compelling reasons to reduce Jean's sentence, limited only by Congress's directive that rehabilitation "alone" does not qualify. Because the District Court correctly determined *McMaryion* (unpublished) and *Escajeda* do not prevent it from considering changes in jurisprudential law in the § 3582(c)(1)(A) analysis, its judgment should be affirmed.

## STANDARD OF REVIEW

This Court reviews the denial (or in this case, the granting) of a compassionate-release motion for abuse of discretion. *See United States v. Jackson*, 27 F.4th 1088, 1091 (5th Cir. 2022). That occurs when a district court "bases its decision on an error of law or a clearly erroneous assessment of the evidence." *Id.* (quoting *United States v. Cooper*, 996 F.3d 283, 286 (5th Cir. 2021)). The Court reviews purported errors of law *de novo*. *Id.*[3]

## ARGUMENT

---

[3]    The Government does not contend the District Court factually erred. *See* Gov't Br. at 13.

## I.    Extraordinary and Compelling Reasons Support Reduction.

The District Court had discretion under § 3582(c)(1)(A) to determine what considerations constitute extraordinary and compelling reasons to reduce Jean's sentence. As amended by the FSA, § 3582(c)(1)(A) states that "[a] court, upon motion of the Director of [BOP], or upon motion of the defendant…, may reduce the term of imprisonment…after considering the factors set forth in section 3553(a) …if it finds that…extraordinary and compelling reasons warrant such a reduction." Critically, in *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021), this Court made clear that when considering a motion for compassionate release filed by a **prisoner**, rather than by the BOP, a district court is not bound by the "extraordinary and compelling reasons" set forth in the Sentencing Commission's policy statement and commentary to USSG § 1B1.13. Rather, "[t]he district court…is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Id*. In fact, *Shkambi* held that a district court **errs** if it treats the Commission's policy statement as binding when considering whether to grant a § 3582(c)(1)(A) motion. *See id*. at 392. In reaching this decision, the Fifth Circuit joined every other circuit to have considered this issue.[4] As the Sixth Circuit remarked in *Jones*: "Until the Sentencing

---

[4]    *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1050–51 (10th Cir. 2021). The First, Third, Ninth, and D.C. Circuits joined this majority. *See United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022); *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446 (2022), *United States v. Aruda*, 993

Commission updates § 1B1.13 to reflect the First Step Act, ***district courts have full discretion*** in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109.[5] Indeed, "motions for compassionate release are inherently discretionary." *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021).

## II. *McMaryion* Does Not Foreclose Considering Jurisprudential Changes.

### A. *McMaryion* Is Unpublished and Not Precedential in This Court.

The Government argues the unpublished decision in *McMaryion* forecloses Jean's argument and the District Court's decision to reduce his sentence. *See* Gov't Br. at 9 n.4, 12, 27. But "[u]npublished opinions issued on or after January 1, 1996, are not precedent" except under certain circumstances not present here. 5th Cir. R. 47.5.4. Thus, the District Court's discretion to consider changes in law has not been foreclosed in a binding way by this Court. Rather, in *United States v. Cooper*, after reaffirming *Shkambi*'s holding that the Sentencing Commission's policy statement is non-binding for prisoner-filed motions, this Court further suggested a district court ***does have*** discretion to consider changes in law. *See* 996 F.3d at 288–289. The Court remanded *Cooper* so the district court could reassess Cooper's motion and consider

---

F.3d 797 (9th Cir. 2021) (per curiam); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021).

[5] Last month § 1B1.13 ***was*** updated to reflect the FSA and confirm the District Court's authority to consider non-retroactive changes in law in the extraordinary-and-compelling-reasons analysis for both BOP-filed and prisoner-filed motions. *See infra* Part II.B.3. As explained below, the amended policy statement further supports departing from *McMaryion*.

whether non-retroactive sentencing changes, alone or in conjunction with other applicable considerations, constituted extraordinary and compelling reasons for a reduction in sentence. *Id*. at 289. Unlike *McMaryion*, *Cooper* is precedential.

As explained below, the Court should decline to follow *McMaryion* in light of: the text and legislative history of § 3582(c)(1)(A); the Supreme Court's opinion in *Concepcion v. United States*, <u>597 U.S. 481</u> (2022); and the Sentencing Commission's recent amendments to its policy statement. *See Plumley v. Austin*, <u>574 U.S. 1127, 1131</u>–32 (2015) (Thomas, J., dissenting) (noting "an unpublished opinion…preserves [a circuit's] ability to change course in the future"). To the extent the Court does consider the holding in *McMaryion*, it is distinguishable.

**B.     This Court Should Decline to Follow *McMaryion*.**

**1.     *McMaryion* is inconsistent with the statutory text and legislative history of § 3582(c)(1)(A).**

Section 3582(c)(1)(A)(i) provides that "in any case…the court…may reduce the term of imprisonment…if it finds that…extraordinary and compelling reasons warrant such a reduction." Congress carved out only one exception: "***[r]ehabilitation***…***alone***" is not an extraordinary and compelling reason. <u>28 U.S.C. § 994(t)</u>. Nowhere did Congress limit qualifying reasons to an inmate's health or family emergencies as the Government implies. Gov't Br. at 19. Had Congress wanted to further limit the eligible reasons, it could have, leading to the ineluctable conclusion that no further limit on a court's discretion exists. *See Concepcion*, <u>142</u>

S. Ct. at 2402 (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)) ("'Drawing meaning from silence is particularly inappropriate'" in the sentencing context, 'for Congress has shown that it knows how to direct sentencing practices in express terms.'"). A district court, of course, must comply with the statutory command that its reason for reducing a sentence be extraordinary and compelling, and that it has not based its decision solely on rehabilitation, but otherwise, a finding of extraordinary and compelling reasons is left to the district court's sound discretion. *See Ruvalcaba*, 26 F.4th at 23; *Brooker*, 976 F.3d at 237 (describing the district court's discretion as "broad"). Any rigid rule that *no circumstance* involving a change in law could *ever* qualify is irreconcilable with § 3582(c)(1)(A)'s text and structure. *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

Section 3582(c)(1)(A)'s legislative history confirms the District Court's decision. The Senate Report states the statute allows for "later review of sentences in particularly compelling situations," such as the reduction "of an unusually long sentence." S. Rep. No. 98-225, at 55–56, 121 (1983). In abolishing parole and creating a "completely restructured [G]uidelines sentencing system," Congress saw the need for judicial authority to reduce a sentence's length in certain cases:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified

by changed circumstances. These would include cases of severe illness, ***cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence***, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

*Id*. at 52, 53 n.196, 55–56. Judges can reduce a sentence when justified by factors the (now abolished) parole system would have addressed, while keeping "the sentencing power in the judiciary where it belongs." *Id*. at 121.[6]

*McMaryion* did not address the statutory text or legislative history, basing its reasoning on the idea that the "ordinary" practice in federal sentencing is to make changes non-retroactive. *McMaryion*, 2023 WL 4118015, at *2 (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). Allowing courts to consider changes in law in the extraordinary-and-compelling-reasons analysis does not disturb this ordinary practice. Because a § 3582(c) motion based on changed law "does not ***guarantee*** a particular result," "the ordinary practice of federal sentencing law is upheld because the [changes] are not being ***automatically*** applied to defendants already sentenced." *United States v. Chen*, 48 F.4th 1092, 1101 (9th Cir. 2022).

### 2. ***McMaryion*** conflicts with ***Concepcion.***

In *Concepcion*, the Supreme Court held "[i]t is only when Congress or the

---

[6] It is unsurprising, then, that during the hearing on Jean's motion, the Government recognized the similarities between Jean's compassionate-release arguments and those made for parole: "You know, it sounds like -- what I heard is it sounded like a parole hearing of sorts. It sounds like he would be an excellent candidate for a commutation or pardon." ROA.857:3-6.

Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." 597 U.S. at 486–87. While *Concepcion* did not specifically address sentence reductions under § 3582(c)(1)(A), it dealt with the similar issue of whether district courts may consider "intervening changes of law…or changes of fact" when applying an FSA provision that "authorizes district courts to reduce the prison sentences of defendants convicted of certain offenses involving crack cocaine." *Id*. at 486. The Supreme Court held "they may." *Id*. Of significance, *Concepcion*'s directives were not limited to this specific FSA provision. The Supreme Court wrote: "Federal courts historically have exercised…broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. ***That discretion also carries forward to later proceedings that may modify an original sentence***." *Id*. at 491. "Such discretion is bounded ***only when Congress or the Constitution expressly limits*** the type of information a district court may consider in modifying a sentence." *Id*.

As noted earlier, in the context of § 3582(c)(1)(A), Congress provided only one express statutory limitation: "[r]ehabilitation…alone." 28 U.S.C. § 994(t). If Congress intended to prevent non-retroactive changes in law from being considered, it needed to do so in "express terms." *Concepcion*, 597 U.S. at 497. Without such an

express statement, there is no basis to restrict a court from considering non-retroactive changes in law under § 3582(c)(1)(A).

### 3. *McMaryion* conflicts with the amended policy statement.

In April 2023, the Sentencing Commission amended USSG § 1B1.13 to take into account the FSA's changes to § 3582(c)(1)(A). ROA.439-514. Notably, the amended policy statement provides for a sentence reduction due to changes in law:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, *a change in the law* (other than an amendment to the Guidelines Manual that has not been made retroactive) *may be considered in determining whether the defendant presents an extraordinary and compelling reason*, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

ROA.441 (amending USSG § 1B1.13(b)(6)).[7] In adopting that viewpoint, the

---

[7] As explained in supplemental briefing on Jean's motion, Jean satisfies these conditions. ROA.435-36. While the Government invites Jean to file another § 3582(c)(1)(A) motion under the amended policy statement, *see* Gov't Br. at 14 n.5, that invitation rings hollow. Unless the Government intends not to oppose Jean's re-filed motion, waive the exhaustion requirement, and agree to expedited determination, this would only waste judicial and penological resources, and needlessly subject Jean to reincarceration pending resolution of the re-filed motion. Instead, the likely outcome is that Jean must reenter prison; submit another request to his Warden to file for compassionate release on his behalf; wait 30 days; re-file his motion before the same District Court that granted his previous one; wait for the Government's response, which will likely argue that the amended policy statement is vague or invalid, *see id.* (retorting that the policy statement now provides a ground based on an "'unusually long sentence'—*whatever that means*"); and wait for the District Court to grant his re-filed motion. Then, the Government will likely appeal that decision back to this Court to resolve the issue of whether the District Court could consider changes in law under § 3582(c)(1)(A) in light of the amended policy statement. Because *McMaryion* is non-precedential and distinguishable, this Court should affirm the District Court's judgment and resolve the legal question in the context of a more appropriately situated case.

Commission said it was "respond[ing] to [the] circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)" and expressly "agree[d] with the circuits that authorize a district court to consider" such changes. ROA.449. In its notice of amendment to Congress, the Commission stated:

> ***One of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences.*** S. Rep. No. 98-225 (1983). Having abolished parole in the interest of certainty in sentencing, ***Congress recognized the need for such judicial authority.*** In effect, it replaced opaque Parole Commission review of every federal sentence with a transparent, judicial authority to consider reducing only a narrow subset of sentences—those presenting "extraordinary and compelling" reasons for a reduction.

ROA.449. Congress took no action to nullify the amendment, which became effective on November 1, 2023.

In light of the amended policy statement, the relevant circuits should revisit their prior holdings restricting a district court from considering changes in law. *See* Gov't Br. at 22 n.10 (discussing circuit split). Congress instructed that the Commission "shall" delineate circumstances qualifying as extraordinary and compelling under § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has done so. Congress's intent is subverted where the Commission lists valid reasons that a court then holds cannot be proffered under § 3582(c)(1)(A). With the Commission— charged by Congress with listing extraordinary and compelling reasons—having

determined that changes in law qualify in certain circumstances, these circuits should rescind their contrary view. In the meantime, this Court should decline to join them.

### C.    *McMaryion* **Is Distinguishable from Jean's Case.**

As explained below, *McMaryion*'s reasoning was limited to non-retroactive changes in **statutory** law. It does not apply to the bases in Jean's motion or the District Court's order granting relief: non-retroactive changes in **jurisprudential** law.

#### 1.    *McMaryion* **addressed changes in** *statutory* **law.**

The Government does not dispute that *McMaryion*'s holding does not explicitly prohibit consideration of changes in **jurisprudential** law. Instead, the Government argues that the *McMaryion* panel's reasoning "was dictated by the more general principle that nonretroactive changes 'in criminal law' are not, as a legal matter, extraordinary and compelling." Gov't Br. at 23 n.11. But the Government reads too much into *McMaryion*'s text to argue for an interpretation divorced from the Court's analysis and facts of that case, which dealt only with statutory changes:

> Second, McMaryion argues that he should get a sentence reduction because the First Step Act reduced **the statutory minimums** applicable to his offenses. But Congress did not make those reductions retroactive. And a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling. Rather, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." ***This ordinary practice reflects a "presumption against*** ***retroactive* legislation*"*** that is "deeply rooted in our jurisprudence" and that "embodies a legal doctrine centuries older than our Republic." ***We*** ***may not usurp the* legislative *prerogative and use* 18 U.S.C.***

**§ 3582(c)(1)** *to create retroactivity that* <u>Congress</u> *did not.*

*McMaryion*, <u>2023 WL 4118015</u>, at \*2 (citations omitted). The "non-retroactive changes in criminal law" *McMaryion* discussed were **legislative** changes, which present separation-of-powers concerns. But as the District Court here recognized, "the separation of powers concerns identified in *McMaryion* are absent" in cases like Jean's where "the change in law is **jurisprudential**." *United States v. Solomon*, No. 3:14-cr-00340-K-5, <u>2023 WL 2920945</u>, at \*4 (N.D. Tex. Apr. 11, 2023); <u>ROA.530</u>.

This conclusion is supported by two other recent opinions from this Court: *United States v. Cisneros*, No. 21-40860, <u>2023 WL 2823903</u> (5th Cir. Apr. 7, 2023) and *United States v. Hurst*, No. 22-20544, <u>2023 WL 3197048</u> (5th Cir. May 2, 2023). In *Cisneros*, the Court characterized *McMaryion* as addressing changes in **statutory** law instead of advancing the Government's sweeping interpretation:

> This court has recently rejected Cisneros's principal argument that non-retroactive sentencing changes **made by the First Step Act** can support a compassionate release motion. *McMaryion v. United States*, – F.4th –, <u>2023 WL 2658434</u>, \*1 (5th Cir. 2023) ("[A] prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion.").

*Cisneros*, <u>2023 WL 2823903</u>, at \*1 n.1. Then, in May 2023, months after the Fifth Circuit decided both *McMaryion* and *Escajeda*, this Court issued its decision in *Hurst*. In *Hurst*, the defendant appealed from the district court's denial of his motion for compassionate release. *See Hurst*, <u>2023 WL 3197048</u>, at \*1. In the district court, Hurst had argued that sentencing errors, changes in law, and other reasons

constituted extraordinary and compelling circumstances warranting relief, but his appeal focused **only** on the sentencing errors. *See id.* Relying on *Escajeda*, this Court dismissed Hurst's claim based on sentencing error, as Hurst could not use compassionate release to challenge the legality of his sentence. *See id.* Critically, however, the Court noted that Hurst "[did] not reprise his argument[] that extraordinary and compelling circumstances exist due to a **change in the law** as concerns the Armed Career Criminal Act" and therefore that he abandoned that argument. *Id.* If, as the Government argues, *McMaryion* had held months prior that changes in law "generally" (including changes in jurisprudential law, specifically) could not be considered, the *Hurst* panel could have simply cited *McMaryion* to dismiss the change-in-law argument altogether. But the panel did not do that, suggesting the Government's broad reading of *McMaryion* is incorrect.[8]

Thus, the literal text of *McMaryion* analyzes only the propriety of considering changes in statutory law. Nonetheless, the Government argues that "the two decisions that *McMaryion* relied on for the principle that 'a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion'—[*Jenkins* and *McCall*]—concluded that intervening judicial decisions, just

---

[8]    If *Escajeda* supported the argument that claims based on changes in law are barred under § 3582(c) for necessarily implicating the legality of the sentence (Gov't Br. at 17), then the *Hurst* panel could have cited *Escajeda* to dismiss the change-in-law argument, too. But the panel did not do that either, undermining the Government's interpretation of *Escajeda*. *See also infra* Part II.I.C (explaining how § 3582(c) motions based on changes in law are not at odds with § 2255).

as statutory changes, do not constitute extraordinary and compelling reasons for compassionate release as a matter of law." Gov't Br. at 23. But general citations to *Jenkins* and *McCall* are not enough to conclude that the *McMaryion* panel intended its holding to apply broadly to both statutory and jurisprudential changes in law. Rather, one must examine the context of those citations.

*McMaryion* relies on *Jenkins* only for *Jenkins*'s discussion on pages 1198–1200 (Part IV.A), regarding changes in **statutory** law and the D.C. Circuit's separation-of-powers concerns. *See United States v. Jenkins*, 50 F.4th 1185, 1198–200 (D.C. Cir. 2022) ("Start with the stacking provision…. The circuits have split on whether courts may consider such intervening but expressly nonretroactive sentencing **statutes**."). *McMaryion* does not cite *Jenkins*'s discussion on pages 1200–1205 (Part IV.B), regarding consideration of changes in case law. So while the Government cites heavily to pages 1200–1204 of *Jenkins* (*see* Gov't Br. at 15–21, 25–26), the *McMaryion* panel did not rely on or adopt **any** of that material.

*McMaryion*'s citation to *McCall* is somewhat opaque. While *McCall* did state that it saw no reason to differentiate between non-retroactive statutory changes and non-retroactive judicial decisions, the significance of that remark was immediately undercut by the "**assum[ption]**…that the difference between nonretroactive [statutory changes to the First Step Act] and nonretroactive changes in sentencing law more broadly is '**immaterial**'" to its analysis. *See United States v. McCall*, 56

F.4th 1048, 1057 & n.4 (6th Cir. 2022). *McCall* did not consider the difference in separation-of-powers concerns between statutory and jurisprudential changes in law. *McMaryion* provides no discussion on that relevant distinction, instead limiting its rationale to the separation-of-powers issues presented by non-retroactive **legislation**. *See McMaryion*, 2023 WL 4118015, at *2. When it comes to consideration of judicial changes, however, the *McMaryion* panel was silent. The Court should reject the Government's invitation to extend *McMaryion*'s application to changes in jurisprudential law, particularly where none of the separation-of-powers concerns *McMaryion* identified are present here, as the District Court found. To the extent the unpublished *McMaryion* opinion is considered at all, its reasoning is inapposite.

> **2.** ***McMaryion* did not address consideration of jurisprudential changes *in combination* with other individual circumstances.**

In addition to leaving open the consideration of non-retroactive judicial decisions, *McMaryion* does not address whether a court can consider non-retroactive changes in jurisprudential law **in combination** with other factors. The First, Fourth, Ninth, and Tenth Circuits have held that non-retroactive legal developments can contribute to a finding of extraordinary and compelling reasons when viewed in combination with a defendant's individualized circumstances. *See Ruvalcaba*, 26 F.4th at 28; *Chen*, 48 F.4th at 1098; *McGee*, 992 F.3d at 1048; *see also McCoy*, 981 F.3d at 286. And as the Seventh Circuit has held, district courts should consider extraordinary and compelling reasons "jointly as well as severally," because multiple

reasons may collectively serve as grounds for relief even if none of them does so independently. *United States v. Vaughn*, 62 F.4th 1071, at 1072–73 (7th Cir. 2023) (explaining how "0 + 0 = 0" is not always true when evaluating the "totality of the circumstances" showing extraordinary and compelling reasons). That is precisely the approach the District Court took here when it found that "Jean's long, comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law ***together*** constitute compelling and extraordinary reasons warranting compassionate release," even if "neither are sufficient on their own." ROA.475; *see also* ROA.471 (similar). While the Government may not agree with *Vaughn*'s (or the District Court's) math, the Government does not cite any controlling authority holding the District Court was wrong to conclude that multiple factors, though insufficient on their own, are together sufficient. *See* Gov't Br. at 21–22 & n.9.

Accordingly, the District Court's order granting Jean's motion is consistent with the approach other circuits have taken when considering non-retroactive changes in law, and that approach was not clearly foreclosed by *McMaryion*.

## III. The District Court Did Not Err in Concluding *Escajeda* Does Not Bar Jean's Motion for Compassionate Release.

### A. *Escajeda* Stands Only for the Proposition That Claims Cognizable Under 28 U.S.C. § 2255 Cannot Be Brought under § 3582(c)(1)(A).

The Government cites this Court's decision in *Escajeda* for the proposition that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his

sentence; such arguments can, and hence must, be raised under Chapter 153 [of Title 28]." Gov't Br. at 15 (quoting *Escajeda*, <u>58 F.4th at 186</u>). According to the Government, this "forecloses" Jean from relying on the fact that he would not be subject to a career-offender enhancement if sentenced today. But the Government overstates *Escajeda*'s holding. In *Escajeda*, the defendant moved for compassionate release based on claims he received ineffective assistance of counsel and his sentence exceeded the statutory maximum—quintessential habeas grounds attacking the ***legality*** of the original sentence in terms of both its very existence and its duration. *See Escajeda*, <u>58 F.4th at 187</u>. This Court held that, because these types of habeas claims are the province of a § 2255 motion, they cannot be brought under § 3582(c). *Id.* at 187–88. Thus, *Escajeda* simply stands for the unremarkable proposition that habeas claims, where a defendant challenges the ***lawfulness*** of the original sentence, are not cognizable under § 3582(c). *Id.* at 188.

In Part II.B of the *Escajeda* decision, this Court cited to decisions from the D.C., Sixth, Seventh, and Eighth Circuits only to support the basic principle that when a defendant is asserting ***habeas*** claims, those claims must be brought under the ***habeas*** statutes. *See id.* at 187–88.[9] The Court did not cite those decisions for

---

[9] Indeed, in most of those decisions, the defendant tried to assert claims in a § 3582(c) motion that the governing circuit court specifically recognized as cognizable under § 2255 instead. *See Jenkins*, <u>50 F.4th at 1200</u>; *United States v. King*, <u>40 F.4th 594, 596</u> (7th Cir. 2022); *United States v. Crandall*, <u>25 F.4th 582, 586</u> (8th Cir. 2022). This case presents the opposite scenario, as the Government has previously argued Jean's claims are ***not*** cognizable under § 2255 in this circuit. *See infra* Part III.B; 2255 Case, Dkt. No. 80 at 3, 8–9 (arguing Jean's "claims based on *Mathis* and

anything more than that basic principle; did not adopt those decisions in full; and did not comment on the types of claims it considers as challenging the legality or duration of a sentence other than classic habeas claims. *See id.*

As the District Court recognized, *Escajeda*'s holding that a prisoner cannot use § 3582(c) to ***challenge the legality of the "duration"*** of a sentence cannot be read to mean that a prisoner cannot use § 3582(c) to seek a compassionate ***reduction*** in that sentence. ROA.475-76. Nor should *Escajeda* be read to mean that a prisoner cannot use compassionate release to petition to reduce a sentence that courts would now consider "too long." Gov't Br. at 18. As an initial matter, multiple courts, including the Southern District of Texas on remand from this Court in *Cooper*, have found "the sheer length of [a defendant's] sentence" and "the disparity between that sentence and the sentence he would receive today" ***can*** be an extraordinary and compelling reason for relief under § 3582(c)(1)(A). *See United States v. Cooper*, No. CR H-09-132-1, 2021 WL 5027498, at *3–4 (S.D. Tex. July 15, 2021) (citing *McCoy*, 981 F.3d at 284–85; *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)). In addition, as previously explained, the legislative history of § 3582(c)(1)(A) confirms an express purpose was to provide an avenue for judicial relief from "***unusually long sentences***." ROA.449. Adopting the Government's position would abrogate the compassionate release statute, which specifically grants

---

*Hinkle* are not cognizable on collateral review" and specifically under § 2255).

courts the power to "reduce the term of imprisonment." This is particularly true where, as here, Jean is not challenging the legality of his original sentence, including its duration; rather, Jean argues that unforeseeable post-sentencing developments contribute to his sentence being unusually and unjustly long.

The Government also claims this Court held in *Escajeda* that a non-retroactive change in law cannot be an extraordinary and compelling reason justifying compassionate release based on *Escajeda*'s citation to out-of-circuit cases. *See* Gov't Br. at 23 (arguing that three of the circuits that *Escajeda* "join[ed]" for the principle that a prisoner cannot use § 3582(c) to challenge the legality or direction of his sentence "all held" that intervening judicial decisions do not qualify). Not so. *Escajeda* did not address non-retroactive changes in law. Indeed, the words "retroactive" and "non-retroactive" do not appear anywhere in the opinion. *Escajeda* simply stands for the proposition that when a prisoner brings claims that "would have been cognizable under § 2255, they are not cognizable under § 3582(c)." *Escajeda*, 58 F.4th at 188; s*ee also id*. at 187 (citing *Jenkins*, 50 F.4th at 1202, only for the proposition that the "habeas-channeling rule" "forecloses using compassionate release to correct sentencing *errors*").

## B. The Government Previously Argued Jean's Claims Are Not Cognizable Under § 2255.

In relying on *Escajeda* to oppose (and now appeal) Jean's compassionate release, the Government appears to argue Jean's *Tanksley*/*Hinkle* claims are not

cognizable under § 3582(c) because they are instead cognizable under § 2255. *See* Gov't Br. at 15; ROA.505 (claiming, in footnote 1, that Jean's arguments "can, and hence ***must***, be raised under Chapter 153" and quoting *Escajeda*, 58 F.4th at 187–88). But when Jean previously moved for relief under § 2255 based in part on those very grounds, the Government argued his claims were ***not*** cognizable under § 2255. *See* 2255 Case, Dkt. No. 80 at 3, 8–9 (arguing Jean's "claims based on *Mathis* and *Hinkle* are not cognizable on collateral review" and specifically under § 2255); ROA.520. Regardless of the Government's arguments here or during briefing on Jean's § 2255 motion, Jean maintains the District Court correctly determined *Escajeda* does not apply because, as explained below, Jean is not challenging the lawfulness of his original sentence in his § 3582(c) motion. But the Government's inconsistent positions further illustrate that if Jean's grounds were not cognizable under § 2255 then, they should not be considered cognizable under § 2255 now to preclude relief under § 3582(c).

### C. Jean's § 3582(c)(1)(A) Motion Did Not Argue, and the District Court Did Not Conclude, Jean's Sentence Was Unlawful.

The District Court recognized *Escajeda*'s habeas-channeling principle does not apply to Jean's motion because Jean does not claim his career-offender enhancement was ***unlawful***; rather, the change in law shows his sentence is now ***unjust*** (and an extraordinary and compelling reason for release). ROA.475-76. Jean disagrees with the Government's argument that a § 3582(c) motion based on an

intervening change in law ***necessarily*** implicates the validity or legality of the sentence, or that this ground for relief rises to the level of a § 2255 claim barred by *Escajeda*. Gov't Br. at 17–18. The Government does not cite any Fifth Circuit cases supporting its conclusion. In addition to the District Court below, at least one other district court in this circuit has rejected essentially this same argument for the same reasons the District Court did here. *See Solomon*, 2023 WL 2920945, at *4.

The Court should not interpret *Escajeda* to hold that § 2255 independently bars § 3582(c) motions premised on changes in law that reveal a sentence to be unusually long. Other circuits, including the First and Ninth Circuits, have held it does not; those circuits have the better argument. *See United States v. Trenkler*, 47 F.4th 42, 48 (1st Cir. 2022); *United States v. Roper*, 72 F.4th 1097, 1101–02 (9th Cir. 2023). *Trenkler* explained "habeas and compassionate release are distinct vehicles for relief," and thus one does not preclude the other. *Trenkler*, 47 F.4th at 48. Instead, the statutes are in harmony because "[§] 2255 deals with the legality and validity of a conviction and provides a method for automatic vacatur," while "[§ 3582(c)] is addressed to the court's discretion as to whether to exercise leniency based on an individualized review of a defendant's circumstances." *Id.* Similarly, *Roper* reasoned neither § 2255 nor "habeas channeling jurisprudence" precludes a § 3582(c) motion based on a change in law, because such a motion does not seek "to correct sentencing errors" but instead "seeks to invoke the sentencing judge's discretion to reduce [a]

sentence" based on an "amalgamation of circumstances—including legal changes creating a sentencing disparity among similarly situated defendants." *Roper*, 72 F.4th at 1102. Because "Congress has provided a mechanism in § 3582(c)(1) that allows defendants to seek modifications even if their sentences were not imposed in violation of the Constitution or federal law" and did not "restrict[] the district courts' ability to consider non-retroactive changes in sentencing law," "Congress itself has left that possibility open." *Chen*, 48 F.4th at 1101.

At bottom, an inmate imploring a district court to exercise discretion "to consider the discrepancy between his sentence and a sentence he would receive were he resentenced under current law" is not upsetting the "sentence [as] 'invalid' or 'unlawful.' Rather, the prisoner concedes, at least for the purpose of his motion for compassionate release, that the sentence is currently valid and lawful, but nevertheless appeals to the equitable discretion of the judge for a sentence modification." *Jenkins*, 50 F.4th at 1213 (Ginsburg, J., concurring in part, dissenting in part, and concurring in the judgment). To be sure, "a defendant-filed motion for sentence reduction and a habeas petition may each result in an inmate's early release from custody," but "the two require different showings and carry different implications about the defendant's original conviction and sentence." *Roper*, 72 F.4th at 1102. In short, neither mechanism is upset by the existence of the other.

## IV. Jean Demonstrated Extraordinary and Compelling Reasons.

In this appeal, the Government does not challenge the District Court's factual determinations, only its legal analysis of *McMaryion* and *Escajeda*. Assuming the District Court's legal analysis is correct (it is), the record contains sufficient evidence to establish extraordinary and compelling reasons for Jean's compassionate release. ROA.470-75, 551-54. Those reasons include not only the *Hinkle*/*Tanksley* change in law but also Jean's unique circumstances, including his "wholly extraordinary" rehabilitation and renewed outlook. ROA.475. Indeed, the District Court highlighted two rare letters of support it received from BOP officials with decades of experience (ROA.472-73, 693, 695) and the statement Jean made at his hearing (ROA.474, 851-55). As to this evidence, the District Court emphasized it "has **never** received such sincere and compelling letters encouraging an inmate's release from such trusted, experienced, and impartial people of authority," and "[w]hen making [his] plea, Mr. Jean exuded a level of sincerity that his words on paper cannot possibly convey, and that the [court] has **never** before witnessed from a criminal defendant." ROA.474-75. The District Court got Jean's motion right.

## CONCLUSION

For the reasons above, this Court should affirm the District Court's judgment.

Dated: December 12, 2023

Respectfully submitted,

_s/ Jeanne M. Heffernan_

JEANNE M. HEFFERNAN
jheffernan@kirkland.com
NADIA E. HAGHIGHATIAN
nadia.haghighatian@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, Texas 78701
(512) 678-9100

*Counsel for Appellee*
*Joel Francois Jean*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Jeanne M. Heffernan*
Jeanne M. Heffernan

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

I certify that:

1) This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 7,566 words as determined by the word counting feature of Microsoft Word.

2) This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2302) in Times New Roman typeface in 14-point size, with footnotes in 12-point size.

3) Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and the brief has been scanned for viruses using Windows Defender and is free of viruses.

December 12, 2023

*s/ Jeanne M. Heffernan*
Jeanne M. Heffernan