# No. 23-40463

# United States Court of Appeals for the Fifth Circuit

**United States of America,**

*Plaintiff-Appellant,*

v.

**Joel Francois Jean,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:08-CR-101-1

**Reply Brief for Appellant United States of America**

Damien M. Diggs
  United States Attorney
  Eastern District of Texas

Bradley Visosky
  Assistant United States Attorney
  101 E. Park Boulevard, Suite 500
  Plano, Texas 75074
  (972) 509-1201

**Attorneys for the United States**

# Table of Contents
**Page(s)**

Table of Authorities ................................................................................ ii

Argument in Reply ................................................................................. 1

    1.    Jean misstates the government's argument and misreads this Court's decision in *Cooper* and the Supreme Court's decision in *Concepcion*……………………………………………………..1

    2.    The Court should decline Jean's invitation to decline to follow *McMaryion*, which faithfully follows *Escajeda*………………..5

    3.    Jean misreads the legislative history of the Sentencing Reform Act and misconstrues the Act's purpose……………..6

    4.    The district court's decision, and Jean's arguments, run afoul of *Escajeda*……………………………………………….…..10

    5.    *Escajeda* also forecloses Jean's challenges to the legality and duration of his sentence because such a challenge could have been raised on direct appeal or under 28 U.S.C. § 2255…….11

Conclusion .............................................................................................. 13

Certificate of Service ............................................................................. 14

Certificate of Compliance ..................................................................... 14

# Table of Authorities

**Federal Cases**                                                       **Page(s)**

*Adkins v. Silverman*,
  899 F.3d 395 (5th Cir. 2018) ............................................................. 6

*Concepcion v. United States*,
  142 S. Ct. 2389 (2022) ...................................................................... 3

*Fleming v. Fleming*,
  264 U.S. 29 (1924) ........................................................................... 12

*Jones v. Hendrix*,
  599 U.S. 465 (2023) ......................................................................... 13

*Mistretta v. United States*,
  488 U.S. 361 (1989) ........................................................................... 8

*Neal v. United States*,
  516 U.S. 284 (1996) ........................................................................... 5

*Tapia v. United States*,
  564 U.S. 319 (2011) ........................................................................... 9

*United States v. Cooper*,
  996 F.3d 283 (5th Cir. 2021) ......................................................... 2, 3

*United States v. Crandall*,
  25 F.4th 582 (8th Cir. 2022) ...................................................... 10, 12

*United States v. Escajeda*,
  58 F.4th 184 (5th Cir. 2023) .................................................... *passim*

*United States v. Jenkins*,
  50 F.4th 1185 (D.C. Cir. 2022) ......................................................... 4

*United States v. King*,
  40 F.4th 594 (7th Cir. 2022) ............................................................. 4

*United States v. Koons,*
 850 F.3d 973 (8th Cir. 2017) ................................................................ 5

*United States v. McCall,*
 56 F.4th 1048 (6th Cir. 2002) ........................................................... 10

*United States v. McMaryion,*
 2023 WL 4118015 (5th Cir. June 22, 2023) ......................................... 6

*United States v. Shkambi,*
 993 F.3d 388 (5th Cir. 2021) ................................................................ 2

*United States v. Williams,*
 808 F.3d 253 (4th Cir. 2015) ................................................................ 5

*United States v. Williamson,*
 183 F.3d 458 (5th Cir. 1999) ............................................................. 12

**Federal Statutes and Rules**

18 U.S.C. § 3582(c)(1)(A) .......................................................... *passim*

28 U.S.C. § 994(t) .................................................................................. 2

28 U.S.C. § 2255 ................................................................ 3, 5, 11, 15

U.S.S.G. § 1B1.13 ............................................................................ 2, 5

**Other Authorities**

132 Stat. 5222.. ...................................................................................... 4

Pub. L. No. 98-473, Tit. II, Ch. 11, 98 Stat. 1987 ................................. 6

S. Rep. 98-225 ....................................................................................... 7

ARGUMENT IN REPLY

1. **Jean misstates the government's argument and misreads this Court's decision in *Cooper* and the Supreme Court's decision in *Concepcion*.**

Jean starts by claiming that the government argued that "the unpublished decision in *McMaryion* forecloses Jean's argument and the District Court's decision to reduce his sentence." Jean Br. 11. But the government never contended that *McMaryion* is binding; in fact, we pointed out, repeatedly, that *McMaryion* was unpublished. USA Br. 9 n.4, 12. What we *did* argue is that this Court's binding decision in "*Escajeda* and the **logic** of *McMaryion*" foreclosed Jean's argument that changes in the sentencing law can constitute extraordinary and compelling reasons. Gov't Br. 27 (emphasis added), 15.

*Escajeda*, a published, precedential decision, authoritatively construed § 3582(c)(1)(A)'s statutory terms "extraordinary and compelling" according to their plain meaning. *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023). The Court "understood 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *Id.* (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d ed. 1934; 1950)). The Court further pointed out that "'[c]ompelling' is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (citing WEBSTER'S SECOND, *supra*, at 544). "These terms explain why prisoners can seek relief under § 3582(c)(1) *only* when they face some extraordinarily severe exigency,

not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (emphasis added).

Here the district court determined, correctly, and consistent with *Escajeda*, that nonretroactive changes in the sentencing law, relied on by Jean, are neither "unusual" nor "unique to the life" of a prisoner because they affect "all prisoners sentenced under the prior law." ROA.471, 475. But if those changes were neither extraordinary and compelling, the district court should have stopped there and denied Jean's motion because the only other basis for a sentence reduction Jean relied on was his alleged rehabilitation, which can't alone be an extraordinary and compelling reason as a matter of law. 18 U.S.C. § 994(t). Alas, the district court did not stop there but went on to find that Jean's "ordinary" reliance on changes in the sentencing law could somehow combine with the only thing the court found *was* "extraordinary and compelling" about Jean's situation — his rehabilitation in prison, ROA.531 — to warrant relief under the statute. The district court erred in so doing. USA Br. 19-21.

Next Jean says that this Court, in *United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021), "suggested a district court **does have** discretion to consider changes in law." Jean Br. at 11 (emphasis in brief). *Cooper* suggested no such thing. The *Cooper* panel simply held that the district court there had erred, under *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021), in treating the policy statement in U.S.S.G. § 1B1.13 as binding and that, freed of that

constraint, the district court should consider "in the first instance" whether nonretroactive changes in sentencing law can be extraordinary and compelling. *Cooper*, 996 F.3d at 289. The *Cooper* panel "offer[ed] no views as to the merits of [Cooper's] motion[.]" *Id*. Thus, not only did *Cooper* accord with the basic principle that appellate courts are courts of review, but it would be odd in the extreme for the *Cooper* panel to have weighed in on the significant legal question of whether nonretroactive changes in the sentencing law could be deemed extraordinary and compelling reasons while performing zero legal analysis of the issue. What's more, Jean's argument presupposes that the panel in *McMaryion* — Judges Oldham, Jones, and Higginbotham — were either somehow unaware of *Cooper* or deliberately chose to ignore it. The likelihood that either of those things happened is nil.

    Jean also urges the Court to decline to follow *McMaryion* in light of the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), which also came before *McMaryion*. Jean Br. 14-16. The Court should decline the invitation. In no sense did *Concepcion* allow district courts to consider an intervening change in sentencing law in determining whether a defendant has supplied an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). In *Concepcion*, the Court considered the scope of a district court's discretion under § 404 of the First Step Act, which provides an explicit statutory mechanism for a court to revisit the

sentence of a defendant convicted of a crack-cocaine offense "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." § 404(a), 132 Stat. 5222; *see id.* § 404(b), 132 Stat. 5222; *Concepcion*, 142 S.Ct. at 2397. The Court explained that, in adjudicating a motion under § 404 of the Act, a district court "may consider other intervening changes" of law or fact, beyond the changes made by those sections of the Fair Sentencing Act. *Concepcion*, 142 S.Ct. at 2396.

　　Unlike § 404 of the First Step Act, which directly authorizes sentence reductions for a specifically defined subset of previously sentenced drug offenders, § 3582(c)(1)(A) contains a threshold requirement that a district court identify "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Indeed, *Concepcion* itself identified § 3582(c)(1)(A) as a statute in which "Congress expressly cabined district courts' discretion" in a way that § 404 does not. 142 S.Ct. at 2401. *Concepcion* thus "mentioned the compassionate-release statute only to support the proposition that Congress knows how to limit which considerations may be used to reduce a sentence" — which "undermines rather than helps" Jean's argument. *United States v. King*, 40 F. 4th 594, 596 (7th Cir. 2022); *United States v. Jenkins*, 50 F. 4th 1185, 1200 (D.C. Cir. 2022) (pointing out that while *Concepcion* explained that a court may consider "any relevant materials" for sentencing "except as limited by statute or the Constitution", "the

4

compassionate-release statute imposes just such a limit, in authorizing a reduced term of imprisonment only for extraordinary and compelling reasons").

## 2. The Court should decline Jean's invitation to decline to follow *McMaryion*, which faithfully follows *Escajeda*.

Jean doesn't like how *McMaryion* was decided,[1] and he urges the Court to decline to follow it because he says it's "inconsistent with

---

[1] Jean's contention that "*McMaryion* conflicts with the amended policy statement" in U.S.S.G. § 1B1.13 is neither here nor there given that both *McMaryion* and the district court's decision at issue here came well before the amended policy statement took effect, and neither *McMaryion* nor the district court's decision relied on the amended policy statement. *See* USA Br. 14 n.5. In any event, Jean's certainly correct that *McMaryion*, not to mention *Escajeda*, conflicts with the new U.S.S.G. § 1B1.13(b)(6), but he's incorrect in assuming that it's this Court's interpretation of the statute, rather than the Sentencing Commission's policy statement, that must fold. The Commission "does not have the authority" to "override" the statute as this Court has construed it. *Neal v. United States*, 516 U.S. 284, 290, 294 (1996); *see also United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (Sentencing Commission cannot "overrule circuit precedent interpreting a statutory provision" (quoting *United States v. Williams*, 808 F.3d 253, 266 (4th Cir. 2015) (Traxler, C.J., dissenting))).

Moreover, the Commission itself sharply divided 4-3 on whether to promulgate the amendments to Section 1B1.13 (with Chair Reeves, Vice Chairs Mate and Restrepo, and Commissioner Gleeson voting in favor and Vice Chair Murray and Commissioners Boom and Wong voting against). *See* USSC Public Meeting Minutes (April 5, 2023), at pp. 26-27, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_minutes.pdf. The dissenting Commissioners explained that the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." USSC Public Meeting Tr. (April 5, 2023), at 60 (Commissioner Wong, delivering joint statement), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf. In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to

5

the statutory text and legislative history of § 3582(c)(1)(A)." Jean Br. 12 (boldface omitted). But as explained above, this Court, in *Escajeda*, has already authoritatively construed the statutory phrase "extraordinary and compelling reasons" based on the ordinary meaning of those terms. *Escajeda*, 58 F.4th at 186. *McMaryion* simply applied *Escajeda* in declaring that § 3582(c)(1)(A) "*requires* a prisoner to show he 'face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that this prisoner has a 'singular' and 'remarkable' need for early release." *United States v. McMaryion*, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *Escajeda*, 58 F.4th at 186) (emphasis added).[2]

## 3. Jean misreads the legislative history of the Sentencing Reform Act and misconstrues the Act's purpose.

In light of § 3582(c)(1)(A)'s plain statutory meaning, there was no need for this Court, in *Escajeda* or *McMaryion,* to look to the legislative history of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, Ch. 11, 98 Stat. 1987 (18 U.S.C. § 3551 *et seq*.); *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018) ("the Supreme Court

---

revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61.

[2] Jean's assertion that "*McMaryion* did not address the statutory text", Jean Br. 14, is thus wrong.

6

has stated repeatedly that where a statute's text is clear, courts should not resort to the legislative history"). In any event, Jean misreads that history. He cites a single sentence from the Senate Report to support his view that § 3582(c)(1)(A) allows court to reduce an "unusually long sentence." Jean Br. 13-14. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." S. Rep. 98-225 (Senate Report), at 55.

Jean takes that line, which is ambiguous at best, out of context and elevates that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example. *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood § 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." *Id.* The passage does not suggest that § 3582(c)(1)(A)

provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

Jean also more broadly misapprehends § 3582(c)(1)(A)'s context and purpose. Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta v. United States*, 488 U.S. 361, 366 (1989) (quoting Senate Report at 38, 65); *see also Neal v. United States*, 516 U.S. 284, 290-91 (1996) ("The [Sentencing] Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." *Id.* at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a

framework to govern their consideration and imposition of sentence." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

Consistent with Congress's goal of determinate sentencing, § 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Jean believes that the Sentencing Reform Act didn't really abolish federal parole, for he claims that the compassionate-release statute allows judges to "reduce a sentence when justified by factors the (now abolished) parole system would have addressed[.]" Jean Br. 14. This view is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to § 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created

9

such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022).

4. **The district court's decision, and Jean's arguments, run afoul of *Escajeda*.**

Jean argues that "*Escajeda*'s holding that a prisoner cannot use § 3582(c) **to challenge the legality of[3] the 'duration'** of a sentence cannot be read to mean that a prisoner cannot use § 3582(c) to seek a compassionate **reduction** in that sentence." Jean Br. 25 (emphasis in brief). But *Escajeda does* mean that a prisoner can't use § 3582(c) to seek a reduction of his sentence *because of* what the prisoner believes to be the sentence's illegality or duration. *Escajeda*, 58 F.4th at 187. Jean tried to use the compassionate-release statute to do both. First, he challenged the *legality* of his sentence by repeating the same *Mathis/Hinkle/Tanksley*-based argument he had raised in his § 2255 proceeding, in which he claimed that the district court's classification of him as a career offender was "against the laws and Constitution of the United States." *Compare* ROA.547-48 *with* 2255 Case, Dkt. No. 76, at 1-2; *see also United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) (en banc) & *Jenkins*, 50 F.4th at 1204 (both explaining that any argument that an intervening change in the sentencing law

---

[3] To clarify, this Court held in *Escajeda* "that a prisoner cannot use § 3582(c) to challenge the legality *or*" — not "of", as Jean claims, Jean Br. 25 — "the duration of his sentence[.]" *Escajeda*, 58 F.4th at 187 (emphasis added).

supplies an extraordinary and compelling reason necessarily implicates the validity and lawfulness of a sentence). Second, he challenged the *duration* of his sentence by arguing that the district court could consider "the sheer length of the sentence imposed" as an extraordinary and compelling reason. ROA.546, 548. The district court erred in disregarding *Escajeda*.

**5.** ***Escajeda*** **also forecloses Jean's challenges to the legality and duration of his sentence because such a challenge could have been raised on direct appeal or under 28 U.S.C. § 2255.**

According to Jean, "*Escajeda* stands only for the proposition that claims cognizable under 28 U.S.C. § 2255 cannot be brought under § 3582(c)(1)(A)." Jean Br. 23 (capitalization omitted). Not so. In addition to construing what the statutory phrase "extraordinary and compelling" means, *Escajeda* explained that "claims that are the province *of direct appeal* **or** a § 2255 motion" cannot be brought as a compassionate-release motion." *Escajeda*, 58 F.4th at 187 (emphasis added). Jean does not answer (and has no answer to) the government's contention that the arguments Jean raised in his § 2255 and § 3582(c)(1)(A) motions are ones that could have been raised before the sentencing court or on direct appeal. USA Br. 16, n.6. This is especially so because the Supreme Court's decision in *Mathis* — upon which *Hinkle* and *Tanksley* relied —did not effect a "change" in the law at all; rather, "it was an interpretation of existing law[,]"*Crandall*, 25 F.4th at 586, as the Supreme Court itself

11

explained. USA Br. 16, n.6; *see also Fleming v. Fleming*, 264 U.S. 29, 31-32 (1924) ("The effect of [a] subsequent decision[] is not to make a new law, but only to hold that the law always meant what the court now says it means").

And it is even all the more so because Jean claimed under oath in his § 2255 proceeding that he perceived the argument, way back in his criminal case and on direct appeal, that he was mistakenly classified as a career offender but that his attorney prevented him from raising it. 2255 Case, Dkt. No. 76, at 2, 3, 5. Jean could have raised a related ineffective-assistance-of-counsel claim in his § 2255 proceeding based on his attorney's alleged actions, and he tried, but it was too late. 2255 Case, Dkt. No. 76, at 1-3; 28 U.S.C. § 2255(f)(1).

Jean makes much of the government's argument in the § 2255 proceeding that Jean's challenge to his career-offender classification at sentencing was not cognizable under § 2255. Jean Br. 26-27. But the claim *wasn't* cognizable under §2255, as the district court correctly concluded, because it involved a challenge to application of the sentencing guidelines that could have been raised on direct appeal. 2255 Case, Dkt. No. 90, at 16-18 & Dkt. No. 99; *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). But this was just another procedural obstacle, in addition to the "one-year time limit of § 2255(f)(1)," that Jean confronted in his § 2255 case. *Crandall*, 25 F.4th at 586; *Jenkins*, 50 F.4th at 1201. Those procedural limitations "embody Congress' judgment regarding the central policy question of

12

postconviction remedies[:] the appropriate balance between finality and error correction[.]" *Jones v. Hendrix*, 599 U.S. 465, 491 (2023). The district court erred by allowing Jean to avoid those restrictions by "resorting to a request for compassionate relief instead." *Crandall*, 25 F.4th at 586; *Escajeda*, 58 F.4th at 187 (explaining that "the habeas-channeling rule . . . prevents a prisoner from so easily steering around Chapter 153's strictures").

## CONCLUSION

This Court should reverse the district court's order granting Jean's compassionate-release motion.

Respectfully submitted,

Damien M. Diggs
United States Attorney
Eastern District of Texas

/s/ *Bradley Visosky*
Bradley Visosky
Assistant U.S. Attorney
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Telephone: (972) 509-1201

Attorneys for the United States

## Certificate of Service

I certify that on December 26, 2023, a copy of this brief was electronically served on counsel for the appellee through use of the Court's ECF system.

/s/ *Bradley Visosky*
Bradley Visosky

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 3,139 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(g) and the type style requirements of Fed. R. App. P. 32(a)(6). It was prepared using Microsoft Word for Office 365 in a proportionally spaced typeface in 14-point size, with footnotes in 12-point size.

/s/ *Bradley Visosky*
Bradley Visosky