No. 23-40463

# In the United States Court of Appeals for the Fifth Circuit

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellant,*

v.

**JOEL FRANCOIS JEAN,**
*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION
NO. 1:08-CR-101-1 (TRUNCALE, J.)

---

## GOVERNMENT'S PETITION FOR REHEARING *EN BANC*

---

DAMIEN M. DIGGS
United States Attorney

BRADLEY VISOSKY
Assistant United States Attorney
Eastern District of Texas

NICOLE M. ARGENTIERI
Principal Deputy Assistant
    Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

TYLER ANNE LEE
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-5593
tyler.lee@usdoj.gov

## RULE 35(b) STATEMENT

The panel decision conflicts with this Court's decision in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023).  Consideration by the full court is therefore necessary to secure and maintain uniformity of the Court's decisions.

# TABLE OF CONTENTS

RULE 35(b) STATEMENT ............................................................ i

TABLE OF CONTENTS .............................................................. ii

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION .......................................................................... 1

STATEMENT OF THE ISSUE .................................................... 2

STATEMENT OF THE CASE ....................................................... 2

  A. Jean Is Sentenced as a Career Offender. ............................ 2

  B. Jean Unsuccessfully Seeks Relief Under 28 U.S.C. § 2255. ...................................................................... 3

  C. The District Court Reduces Jean's Sentence to Time Served Under Section 3582(c)(1)(A). ................................ 4

  D. The Panel Affirms the District Court's Order Granting a Sentence Reduction. ....................................................... 6

ARGUMENT .................................................................................. 8

  A. The Panel's Opinion Violates *Escajeda*'s Habeas-Channeling Rule. .............................................................. 9

  B. The Panel's Opinion Conflicts with *Escajeda*'s Construction of Section 3582(c)(1)(A)'s Statutory Text. ...................................................................... 12

  C. Conflicting Precedents Are Relevant to the Validity of the Amended Policy Statement. ........................................ 17

CONCLUSION ............................................................................ 18

CERTIFICATE OF COMPLIANCE .......................................... 20

CERTIFICATE OF SERVICE .................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Dorsey v. United States*,
    567 U.S. 260 (2012) ................................................................. 14

*Fleming v. Fleming*,
    264 U.S. 29 (1924) ................................................................... 13

*Gonzalez v. Crosby*,
    545 U.S. 524 (2005) ................................................................. 14

*Mathis v. United States*,
    579 U.S. 500 (2016) ................................................................... 3

*United States v. Cardenas*,
    No. 19-40425, 2024 WL 615542 (5th Cir. Feb. 14, 2024) ........................ 15

*United States v. Crandall*,
    25 F.4th 582 (8th Cir. 2022) ..................................................... 13

*United States v. Elam*,
    No. 22-40373, 2023 WL 6518115 (5th Cir. Oct. 5, 2023) ........................ 15

*United States v. Escajeda*,
    58 F.4th 184 (5th Cir. 2023) ................................ i, 1, 5, 9, 10, 11, 13, 15, 16

*United States v. Hinkle*,
    832 F.3d 569 (5th Cir. 2016) ...................................................... 3

*United States v. Jean*,
    108 F.4th 275 (5th Cir. 2024) ................ 6, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18

*United States v. Jenkins*,
    50 F.4th 1185 (D.C. Cir. 2022) ................................................... 10

*United States v. King*,
    40 F.4th 594 (7th Cir. 2022) ..................................................... 14

*United States v. McCall,*
    56 F.4th 1048 (6th Cir. 2022) (en banc).................................................. 10

*United States v. McMaryion,*
    No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023).................15, 16

*United States v. Shkambi,*
    993 F.3d 388 (5th Cir. 2021) ....................................................................4

*United States v. Tanksley,*
    848 F.3d 347 (5th Cir. 2017) ....................................................................3

*United States v. Viera,*
    No. 24-10095, 2024 WL 4057573 (5th Cir. Sept. 5, 2024) ....................... 12

**Statutes and Rules**

18 U.S.C. § 3582 ..................................................................................... 1, 2

21 U.S.C. § 846............................................................................................ 2

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ......................... 4

U.S.S.G. § 1B1.13 ................................................................................... 7, 17

**Other Authorities**

WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1934; 1950)............. 13

**INTRODUCTION**

In *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), this Court held that a prisoner cannot use the sentence-reduction statute, 18 U.S.C. § 3582(c)(1)(A) (commonly referred to as "compassionate release"), to "challenge the legality or the duration of his sentence," to "steer[]" around the procedural limitations of 28 U.S.C. § 2255, or to establish "extraordinary and compelling reasons" for a sentence reduction based on circumstances that are not "unique to the life of the prisoner." *Id.* at 186-87.

Here, in affirming the district court's order granting defendant Joel Jean's Section 3582(c)(1)(A) motion, the panel majority contravened each of those limitations. Jean's argument that his sentence is "unjustly long" amounts to a claim of sentencing error, which he already unsuccessfully raised in a Section 2255 motion. And the intervening judicial decisions that he cites in support of his claim that his sentence would be different today are not circumstances unique to him.

The panel majority's holding that district courts may consider nonretroactive developments in sentencing law in determining whether a defendant has established "extraordinary and compelling reasons" for a sentence reduction conflicts with *Escajeda*'s construction of Section 3582(c)(1)(A)'s text and limits. This untenable intra-circuit conflict will produce

significant uncertainty for district courts in resolving sentence-reduction motions and force them to choose between competing precedents. The *en banc* Court should resolve this conflict.

## STATEMENT OF THE ISSUE

Whether a nonretroactive development in sentencing law may be considered in determining whether "extraordinary and compelling reasons" exist for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

## STATEMENT OF THE CASE

### A.    Jean Is Sentenced as a Career Offender.

In 2009, following a guilty plea in the Eastern District of Texas, Jean was convicted of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c).  ROA.161.

At sentencing, the district court found that Jean was a career offender under Sentencing Guidelines § 4B1.1 because he had three prior Texas convictions for controlled-substance offenses.  ROA.792-794; *see* ROA.943.  The court sentenced Jean to 292 months of imprisonment, below the advisory guidelines range of 352 to 425 months.  ROA.162, 794, 952.

This Court dismissed Jean's direct appeal.  ROA.187-188.

**B.    Jean Unsuccessfully Seeks Relief Under 28 U.S.C. § 2255.**

In 2012, Jean filed a motion to correct, set aside, or vacate his sentence under 28 U.S.C. § 2255.  *See* Doc.1, *Jean v. United States*, No. 12-cv-111 (E.D. Tex.).  In 2017, Jean supplemented that motion, arguing that the district court erroneously applied the career-offender guideline in light of *Mathis v. United States*, 579 U.S. 500 (2016), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016).  Doc.76, No. 12-cv-111.  Under those decisions, Jean argued, two of his prior Texas convictions were not "controlled substance offenses" and therefore not career-offender predicates, and thus that his sentence was "against the laws and Constitution of the United States."  *Id.* at 1-2.  Jean further asserted that counsel prevented him from preserving this error at sentencing and on direct appeal.  *Id.* at 2.

The district court denied the motion.  Doc.90, No. 12-cv-111 (Apr. 30, 2021); Doc.99, No. 12-cv-111 (Feb. 1, 2023).  The court determined that Jean's claims were time-barred and that *Mathis* and *Hinkle* "did not announce a new rule and have not been made retroactively applicable to cases on collateral review."  Doc.90, No. 12-cv-111, at 17.  The court acknowledged that this Court had held in *United States v. Tanksley*, 848 F.3d 347 (5th Cir. 2017), that Texas possession of a controlled substance with intent to deliver does not qualify as a controlled-substance offense for purposes of the career-offender guideline.  The

court explained, however, that any *Tanksley*-based challenge likewise lacked merit because claims based upon misapplication of the Guidelines are not cognizable under Section 2255 and "[n]onconstitutional claims that could have been raised on direct appeal may not be asserted" in a Section 2255 proceeding. Doc.90, No. 12-cv-111, at 17-18.

## C.  The District Court Reduces Jean's Sentence to Time Served Under Section 3582(c)(1)(A).

In the First Step Act of 2018, Congress authorized defendants to file motions seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).  *See* Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239; *United States v. Shkambi*, 993 F.3d 388, 390-92 (5th Cir. 2021).  Section 3582(c)(1)(A)(i) authorizes a district court to reduce a defendant's previously imposed term of imprisonment if, after considering any applicable factors set forth in 18 U.S.C. § 3553(a), the court determines that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

In January 2023, Jean moved for a sentence reduction under Section 3582(c)(1)(A), arguing that the following "extraordinary and compelling reasons" warranted relief: (1) if sentenced today, he would no longer qualify as a career offender under intervening Fifth Circuit law, (2) the length of his sentence, and (3) his post-sentencing rehabilitation.  ROA.546-551.  In

particular, he argued that because the career-offender guideline would not apply if he were sentenced today, "the sheer length of the sentence it produced is extraordinary and disparate." ROA.548.

The government opposed, arguing that Jean had not established extraordinary and compelling reasons and that relief in any event was not warranted under the Section 3553(a) factors. ROA.392-398. The government argued that under *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), prisoners can seek relief under Section 3582(c)(1)(A)(i) only when they face an unforeseeable exigency "*unique to the life of the prisoner*,'" and that Jean's situation was not unique because many defendants are serving a sentence that might be different under current law. ROA.408-409. The government also noted that in *Escajeda*, when concluding that prisoners cannot use Section 3582(c) to challenge the legality or duration of their sentences, this Court joined other circuits that have held that nonretroactive changes in law cannot be extraordinary and compelling reasons as a matter of law under Section 3582(c)(1)(A). ROA.408-409.

In May 2023, the district court granted Jean's motion. ROA.468-477. The court found that Jean would not be subject to the career-offender enhancement if sentenced today and his advisory guidelines range would be 160 to 185 months. ROA.470-471. The court recognized that a "'non-retroactive

change in the law regarding sentencing is not unusual,'" "[n]or is it unique to the life of the prisoner," but nevertheless concluded that such a change "may constitute extraordinary and compelling reasons warranting compassionate release when other factors, such as the defendant's rehabilitation, are also present." ROA.471. The court concluded: "While neither are sufficient on their own, Mr. Jean's long, comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law together constitute compelling and extraordinary reasons." ROA.475. After stating that granting Jean's motion was consistent with the Section 3553(a) factors, the court reduced his sentence to time served. ROA.476-479. The court denied a motion for reconsideration. ROA.529-531.

### D. The Panel Affirms the District Court's Order Granting a Sentence Reduction.

A divided panel of this Court affirmed. *United States v. Jean*, 108 F.4th 275 (5th Cir. 2024). The majority held that district courts may "consider non-retroactive changes in sentencing law when determining whether extraordinary and compelling reasons exist for compassionate release." *Id.* at 282. The majority concluded that this Court's prior decision in *Escajeda* did not foreclose Jean's arguments because Jean did not argue that his original sentence was unlawfully imposed, only that his sentence was "unjustly long" "in light of the current state of the law." *Id.* at 285. Although the majority acknowledged

6

*Escajeda*'s requirement that extraordinary and compelling reasons must be "'unique to the life of the prisoner,'" it reasoned that because "non-retroactive changes in the law will affect each person individually," district courts have discretion to consider whether such changes, combined with rehabilitation, constitute extraordinary and compelling reasons. *Id.* at 286.

The majority additionally noted that the Sentencing Commission amended the policy statement applicable to Section 3582(c)(1)(A) motions, effective November 1, 2023, to allow courts to consider a "change in the law" in assessing whether a defendant has established extraordinary and compelling reasons for a sentence reduction. *See* U.S.S.G. § 1B1.13(b)(6). It recognized that the amended policy statement was not "directly applicable" to this case because Jean's motion was decided before the policy statement went into effect. *Jean*, 108 F.4th at 288. However, the majority stated that reaching an outcome "contrary to the one now reached by the Sentencing Commission would be a fool's errand," citing the amended policy statement as "further support[]" for its holding. *Id.* at 290.

Judge Smith dissented. Characterizing the majority's opinion as a "violation of this court's well-respected rule of orderliness," Judge Smith maintained that under *Escajeda*, "district courts may not consider non-retroactive changes in law when assessing whether a defendant has shown extraordinary

and compelling circumstances" because *Escajeda*'s construction of "extraordinary and compelling" "unambiguously excluded" such changes. *Jean*, 108 F.4th at 291, 297. Judge Smith characterized the majority's discussion of the amended policy statement as *dicta* and reasoned that the policy statement was invalid even if it applied to Jean's motion because "[t]he Sentencing Commission 'does not have the authority' to 'override' the statute's plain meaning." *Id.* at 297.

## ARGUMENT

The panel majority held that Section 3582(c)(1)(A)(i) "permits a district court to consider non-retroactive changes in sentencing law when determining whether extraordinary and compelling reasons exist for compassionate release." *Jean*, 108 F.4th at 282. That holding conflicts with this Court's prior decision in *Escajeda* in two ways. First, because Jean's claim necessarily implicates the validity of his original sentence, the panel's holding violates *Escajeda*'s directive that defendants may not use Section 3582(c)(1)(A) motions to avoid the strictures of Section 2255. Second, a nonretroactive development in sentencing law is not "extraordinary and compelling" within the meaning of that phrase as *Escajeda* construed it.

The panel's decision creates an intra-circuit conflict that will produce substantial confusion among district courts adjudicating compassionate-release

motions. *En banc* review is warranted to correct the majority's misreading of *Escajeda* and provide guidance to the courts in this Circuit.

**A.    The Panel's Opinion Violates *Escajeda*'s Habeas-Channeling Rule.**

In *Escajeda*, this Court held that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence." 58 F.4th at 187. Rather, such arguments "*must*" be raised under Chapter 153 of Title 28. *Id.* In codifying Chapter 153, Congress provided specific avenues for prisoners to challenge the legality of their custody—such as 28 U.S.C. § 2255—and prohibited prisoners from bringing such claims under other, more general statutes. *See id.* at 186-87. This "habeas-channeling rule" "'forecloses using compassionate release to correct sentencing errors.'" *Id.* at 187.

*Escajeda* should have foreclosed Jean's reliance on his claim that he would not receive a career-offender enhancement if sentenced today. The panel majority here recognized that the habeas-channeling rule is violated "if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Jean*, 108 F.4th at 285. Nevertheless, the majority sought to distinguish *Escajeda* on the ground that Jean "did not argue that his original conviction was imposed in violation of the Constitution or the laws of the United States," but rather that "his sentence is now unjustly long following

9

the decisions in *Mathis*, *Hinkle*, and *Tanksley*." *Id.* That distinction does not withstand scrutiny.

"[A]rguing that an intervening change to sentencing law provides an extraordinary and compelling reason for early release necessarily implicates the validity of the relevant sentence." *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) (en banc) (rejecting claim of "extraordinary and compelling" reasons based on career-offender status). For Jean to prevail on such a claim, "the court would necessarily have to conclude that his sentence was unlawfully imposed." *United States v. Jenkins*, 50 F.4th 1185, 1204 (D.C. Cir. 2022). This Court confirmed in *Escajeda* that the habeas-channeling rule forecloses such "'indirect attacks seeking a judicial determination that necessarily implies the unlawfulness of the [Government]'s custody.'" 58 F.4th at 187.

Jean's argument that his sentence is "unjustly long" as compared to the one he would receive today in light of intervening judicial decisions interpreting the career-offender guideline is, at bottom, a claim that the district court erred in sentencing him as a career offender. But *Escajeda* "'forecloses using compassionate release to correct sentencing errors'" because such claims "are the province of direct appeal or a § 2255 motion, not a compassionate release motion." *Id.* Jean could have raised this claim on sentencing or on direct appeal—and indeed he already raised it in an unsuccessful Section 2255 motion.

10

*See* Doc.76, No. 12-cv-111, at 1-4 (arguing his career-offender classification was "against the laws and Constitution of the United States" following *Mathis* and *Hinkle*).

Nevertheless, after the district court rejected Jean's claim under Section 2255, Jean sought to evade Section 2255's procedural and substantive restrictions by moving under Section 3582(c)(1)(A) on the same theory: again arguing that his sentence should be reduced because he would not qualify as a career offender if sentenced today.  In finding that Jean had established extraordinary and compelling reasons under Section 3582(c)(1)(A) based on those arguments, the district court altered the duration of Jean's sentence to account for intervening case law, thereby implying that Jean's original sentence was unlawful.  And by affirming the district court's grant of relief to Jean on that basis, the panel majority's decision permits the use of sentence-reduction motions as an end-run around Congress's limitations on collateral review—in direct disregard of *Escajeda*'s pronouncement that the habeas-channeling rule "prevents a prisoner from so easily steering around [Section 2255's] strictures." 58 F.4th at 187.  Treating an asserted legal error in the original proceedings as an "extraordinary and compelling" reason for a sentence reduction allows defendants to "'impermissibly circumvent[] the requirement[s]' Congress imposed in Chapter 153." *Id.*

*Jean*'s conflict with *Escajeda* on this point produces significant uncertainty for courts' consideration of sentence-reduction motions going forward. Despite *Escajeda*'s conclusion that the habeas-channeling rule bars a defendant's claim that extraordinary and compelling reasons exist because a sentence exceeds the present-day statutory maximum, *Jean* suggests that same defendant would be eligible for relief if he simply repackages the claim as seeking reduction of an "unjustly long" sentence. *See* 108 F.4th at 285. Courts will inevitably struggle with which decision to follow, resulting in the selective application of conflicting precedents and disparate outcomes depending on how a defendant labels his claim.[1] This Court's *en banc* review is necessary to provide guidance.

### B. The Panel's Opinion Conflicts with *Escajeda*'s Construction of Section 3582(c)(1)(A)'s Statutory Text.

The panel majority held that Section 3582(c)(1)(A) permits district courts to consider "non-retroactive changes in sentencing law" when determining whether a defendant has established "extraordinary and compelling" reasons for

---

[1] A recent decision by a panel of this Court illustrates this point. In *United States v. Viera*, the panel invoked *Escajeda*'s rule that "'a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence'" in affirming the denial of a sentence-reduction motion where a defendant had argued that his sentence was "unjust and unfair" due in part to the guidelines sentence selected by the district court. No. 24-10095, 2024 WL 4057573, at *1 (5th Cir. Sept. 5, 2024) (per curiam). Yet such an argument presumably would not be barred under *Jean*, which purports to allow a prisoner to claim extraordinary and compelling reasons based on an "unjustly long" sentence. *See* 108 F.4th at 285.

a sentence reduction.  But *Escajeda* construed the statutory term "extraordinary and compelling" to preclude nonretroactive changes in law—and more accurately, as is the case here, an intervening judicial decision about sentencing law.[2]

In *Escajeda*, this Court identified the ordinary meaning of "extraordinary" as: "'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'"  58 F.4th at 186 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d ed. 1934; 1950).  And it noted that "compelling" is a participle of "compel," which means "'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'"  *Id.* (quoting WEBSTER'S 544).  The Court accordingly explained: "These terms explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner."  *Id.*

A nonretroactive change or intervening judicial decision pertaining to sentencing law is neither extraordinary nor compelling.  As Judge Smith

---

[2] The majority's characterization of the intervening judicial decisions (*Mathis/Hinkle/Tanksley*) at issue here as "changes in law" is imprecise.  In interpreting the career-offender guideline, those decisions did not effect a "change" in the law but rather held "that the law always meant what the court now says it means."  *Fleming v. Fleming*, 264 U.S. 29, 31-32 (1924); *see United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) ("*Mathis* did not change the law; it was an interpretation of existing law.").

explained, "[t]here's nothing extraordinary about new statutes or caselaw," which are the "ordinary business of the legal system." *Jean*, 108 F.4th at 296 (quotations omitted); *see United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (nonretroactive statutory changes or judicial decisions are not "extraordinary" and "their consequences should be addressed by direct appeal or collateral review"); *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (observing that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation" of a federal statute); *Dorsey v. United States*, 567 U.S. 260, 280 (2012) ("[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced."). Likewise, for a district court to treat a nonretroactive legal development as a driving or compelling reason to disturb a final sentence would undo the balance already struck by ordinary nonretroactivity principles.

Thus, as Judge Smith explained: "*Escajeda* directly construed the phrase 'extraordinary and compelling' as used in § 3582(c)(1)(a)(i). That construction unambiguously excluded non-retroactive changes in law." *Jean*, 108 F.4th at 297. That construction is precisely why this Court has applied *Escajeda* to hold unequivocally that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes

are neither extraordinary nor compelling." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam). Panels of this Court have consistently followed that rule in unpublished decisions. *See United States v. Elam*, No. 22-40373, 2023 WL 6518115, at *2 (5th Cir. Oct. 5, 2023) (per curiam); *United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024) (per curiam). While not binding, those decisions follow necessarily from *Escajeda*, and as Judge Smith explained, "enunciate the law in unmistakable terms." *See Jean*, 108 F.4th at 297 & n.17.

The majority here, by contrast, disregarded *Escajeda*'s construction of the statutory term "extraordinary and compelling" in holding that nonretroactive changes in law can qualify. In addition to disregarding the ordinary meaning of "extraordinary" and "compelling" *Escajeda* identified, the panel's ruling contravenes *Escajeda*'s specific directive that "prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." 58 F.4th at 186.

Nowhere does the majority's decision address how a nonretroactive development in sentencing law could possibly be an "extraordinarily severe exigency" or "not foreseeable at the time of sentencing." *Id.* Nor is such a development something that is "unique to the life of the prisoner." *Id.* As Judge

Smith explained, "a non-retroactive change in sentencing law … affects all prisoners sentenced under the prior law," and "an event that applies uniformly to *all* similarly situated prisoners cannot be unique to the life of *a* particular prisoner." *Jean*, 108 F.4th at 293-94.  Accordingly, "non-retroactive changes in law do not qualify as 'extraordinary' as *Escajeda* defined that word in binding, published precedent." *Id.* at 294.

That the district court considered changes in law in conjunction with Jean's rehabilitation makes no difference.  Whether considered alone or in combination with other asserted factors, the court is "legally prohibited from considering" a nonretroactive change in law "because it is outside the scope of, or prohibited by" the sentence-reduction statute.  *Id.* at 295 (Smith, J., dissenting).  As Judge Smith reasoned, "[i]f 'non-retroactive changes in criminal law' cannot be used 'to support a compassionate release motion,' then there is no way in which such changes could ever combine with other factors, themselves insufficient, to justify compassionate release." *Id.* at 294 (quoting *McMaryion*, 2023 WL 4118015, at *2); *see* 28 U.S.C. § 994(t) (providing that rehabilitation alone shall not be considered an extraordinary and compelling reason).

### C. Conflicting Precedents Are Relevant to the Validity of the Amended Policy Statement.

Although the panel majority described its decision as "applicable only to motions decided by district courts prior to November 1, 2023," the effective date of the Sentencing Commission's amended policy statement on sentence-reduction motions, *Jean*, 108 F.4th at 279, it did not appear to view the decision's implications to be so limited. The majority's decision will be relevant to the question of whether the amended policy statement is a valid exercise of the Sentencing Commission's authority, which is presently pending in this Court. *See United States v. Gipson*, No. 24-10260 (opening brief filed July 26, 2024). In reaching its holding, the majority suggested that the policy statement is valid. The majority observed that subsection (b)(6) of the policy statement purports to allow district courts to consider certain "change[s] in the law" in determining whether a defendant has established extraordinary and compelling reasons. *See Jean*, 108 F.4th at 289-90; U.S.S.G. § 1B1.13(b)(6). And the majority expressed the view that the policy statement "further support[ed]" its holding that district courts may consider nonretroactive changes in law, stating that to reach an outcome contrary to the Commission's "would be a fool's errand." *Jean*, 108 F.4th at 288, 290.

To the extent this Court believes that the majority's discussion would be dispositive of future sentence-reduction motions brought under the policy

statement, *en banc* review is especially warranted. As Judge Smith explained, the policy statement conflicts with *Escajeda*. *See Jean*, 108 F.4th at 296 (reasoning that because *Escajeda*'s construction of "extraordinary and compelling" excluded nonretroactive changes in law, "the Commission's amended policy statement violates § 3582(c)(1)(A)(i)'s text … and therefore is neither binding nor persuasive"). *En banc* clarification therefore is necessary to avoid confusion in *Gipson* and other future cases over the proper application of this Court's precedents.

Should this Court conclude that the majority's discussion of the policy statement is *dicta* and that the majority's decision would not be dispositive of the question of the policy statement's validity, then this Court may address that issue in *Gipson* or a future case that directly presents that issue. But otherwise, the majority's apparent view that its decision necessarily implies the policy statement's validity is a particularly strong reason for further review.[3]

## CONCLUSION

For the foregoing reasons, this Court should grant the government's petition for rehearing *en banc*.

---

[3] If the Court wishes to consider the policy statement's validity directly, it could grant *en banc* review in both this case and *Gipson*.

Respectfully submitted,

DAMIEN M. DIGGS
United States Attorney

BRADLEY VISOSKY
Assistant United States Attorney
Eastern District of Texas

NICOLE M. ARGENTIERI
Principal Deputy Assistant
  Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

/s/ Tyler Anne Lee
TYLER ANNE LEE
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-5593
tyler.lee@usdoj.gov

September 18, 2024

## CERTIFICATE OF COMPLIANCE

1.     This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) and 5th Cir. R. 35.5 because it contains 3,897 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.     This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared on a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

/s/ Tyler Anne Lee
TYLER ANNE LEE

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2024, I electronically filed the foregoing Petition for Rehearing *En Banc* with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Tyler Anne Lee
TYLER ANNE LEE

# APPENDIX A

108 F.4th 275
United States Court of Appeals, Fifth Circuit.

UNITED STATES of America, Plaintiff—Appellant,
v.
Joel Francois JEAN, Defendant—Appellee.

No. 23-40463
|
July 15, 2024

**Synopsis**

**Background:** Defendant who had been convicted of drug and weapons charges moved for compassion release. The United States District Court for the Eastern District of Texas, Michael J. Truncale, J., granted defendant's motion. Government appealed.

**Holdings:** The Court of Appeals, Dana M. Douglas, Circuit Judge, held that:

non-retroactive changes in the law, when combined with extraordinary rehabilitation, could amount to extraordinary and compelling reasons warranting compassionate release;

Congress, in limiting grounds for compassionate release to extraordinary and compelling reasons, did not limit sentencing court's ability to consider non-retroactive changes in the law as factor;

habeas-channeling rule that required attack by person in custody upon legality of that custody to be brought via habeas corpus did not foreclose defendant's arguments for compassion release on basis that his sentence was now unjustly long in view of subsequent appellate decisions; and

amendments to sentencing guidelines that addressed compassionate release motions brought by criminal defendants and created list of extraordinary and compelling circumstances could justify sentence reduction.

Affirmed.

Smith, Circuit Judge, filed dissenting opinion.

**Procedural Posture(s):** Appellate Review; Sentencing or Penalty Phase Motion or Objection.

**\*277** Appeal from the United States District Court for the Eastern District of Texas, USDC No. 1:08-CR-101-1, Michael Joseph Truncale, U.S. District Judge,

**Attorneys and Law Firms**

Bradley Elliot Visosky, Assistant U.S. Attorney, U.S. Attorney's Office, Plano, TX, for Plaintiff-Appellant

Jeanne Marie Heffernan, Nadia E. Haghighatian, Kirkland & Ellis, L.L.P., Austin, TX, for Defendant-Appellee

Before Smith, Wiener, and Douglas, Circuit Judges.

**Opinion**

Dana M. Douglas, Circuit Judge:

The United States appeals the grant of compassionate release to Joel Francois Jean. Because Jean exhibited extraordinary rehabilitation and because his sentence, if imposed today, would have been nearly a decade shorter, the district court held compassionate release was warranted. Finding no abuse of discretion, we AFFIRM.

I

A

Compassionate release is not a new remedy; in fact, "[i]t dates back at least to the Parole Reorganization Act of 1976." *United States v. Shkambi*, 993 F.3d 388, 390 (5th Cir. 2021) (Oldham, J.). This early compassionate release statute read as follows: "At any time upon motion of the Bureau of Prisons [("BOP")], the court may reduce any minimum term to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed 1987). "The capaciousness of that text authorized the BOP to request (and district courts to grant) reductions for a wide range of reasons." [1] *Shkambi*, 993 F.3d at 390.

**\*278** In 1984, Congress enacted the Sentencing Reform Act ("SRA") wherein "Congress abolished federal parole and forbade the federal courts from 'modifying a term of imprisonment once it has been imposed.' " *Id.* (citation omitted). But Congress retained an exception for compassionate release motions through its enactment of 18 U.S.C. § 3582. *Id.* Thus, even after the SRA, a

district court could, on a motion from the BOP, modify a term of imprisonment where, *inter alia*, "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

In enacting § 3582, Congress intended to act as a " 'safety valve[ ]' for modification of sentences" to "assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons.' " S. Rep. No. 98-225, at 121 (1983). Through § 3582, Congress intended to keep "the sentencing power in the judiciary where it belongs, yet permit[ ] later review of sentences in particularly compelling situations." *Id.*

The "extraordinary and compelling reasons" prong has been —as we have described—"notoriously thorny." *Shkambi*, 993 F.3d at 391. This is in part because "Congress never defined or provided examples of 'extraordinary and compelling reasons' that might warrant a reduction." *Id.* at 390. Rather, Congress explicitly and clearly delegated that authority to the United States Sentencing Commission. *Id.* Specifically, the SRA "instructed the Commission to 'promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)' that 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.' " *Id.* (citation omitted). In delegating its authority, Congress provided only a single restriction: that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason."[2] *Id.* (emphasis added).

Exercising the authority explicitly delegated to it by Congress, the Commission enacted U.S.S.G. § 1B1.13 to inform the extraordinary and compelling reasons analysis undertaken by district courts. In its commentary to § 1B1.13, the Commission outlined four categories of circumstances that may be considered extraordinary and compelling: (1) medical conditions of the defendant; (2) age of the defendant; (3) family circumstances; and (4) other reasons. U.S.S.G. § 1B1.13 (effective Nov. 1, 2006).

Notably, however, until 2018, compassionate release motions could only be brought by the BOP—not by criminal defendants. *See Shkambi*, 993 F.3d at 391. But in 2018, Congress enacted the First Step Act ("FSA"), which for the first time allowed criminal defendants to move for compassionate release. *Id.* at 392. The Commission, however, did not have a quorum from 2019 through 2022 and thus could

not promulgate new guidance for these prisoner-brought motions.[3] U.S. **\*279** Sent'g Guidelines Manual Supplement to App. C at 204-05 ("Because the Commission lost its quorum in early 2019 and did not regain it until 2022, it was unable to amend § 1B1.13 during the more than four-year period since defendants were first permitted to file such motions."). In the meantime, we held that the commentary for motions brought by the BOP was not applicable to motions brought by criminal defendants like this one. *Shkambi*, 993 F.3d at 393. Therefore, until November 1, 2023, when the Sentencing Commission enacted an applicable policy statement, what constituted extraordinary and compelling reasons for motions brought by criminal defendants was left to the broad discretion of the district courts, limited only by Congress's directive that rehabilitation alone was insufficient.

In the absence of guidance from Congress or the Sentencing Commission, appellate courts split on whether district courts could consider non-retroactive changes in the law as a factor when deciding whether extraordinary and compelling reasons existed for compassionate release. *Compare United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), *United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022), and *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), *with United States v. Crandall*, 25 F.4th 582 (8th Cir. 2022), *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), and *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021). And, until now, we have not definitively decided this issue, a decision applicable only to motions decided by district courts prior to November 1, 2023.[4]

It was under this framework that the district court evaluated, and granted, Jean's motion for compassionate release.

## B

We turn now to the facts of the case before us. Jean has been incarcerated in Texas since 2009. In 2007, Jean was one of five defendants indicted on charges stemming from an ongoing investigation into the use of motels to traffic drugs in the Houston, Texas area. On the day that Jean's trial was to start, he pleaded guilty to conspiracy to possess with the intent to distribute cocaine and possession of a firearm in furtherance of a drug-trafficking offense.

At the time of sentencing, Jean had three qualifying Texas convictions for controlled-substance offenses, and as a result, he was classified as a career offender under U.S.S.G. §

4B1.1. Due to his classification as a career offender, Jean's Guidelines range was 352 to 425 months' imprisonment, and he was ultimately sentenced to 292 months imprisonment, a downward variance from the Guidelines.

In the years after Jean was sentenced, a series of cases redefined what could be considered a controlled-substance offense **\*280** for the purpose of § 4B1.1—namely, *Mathis v. United States*, 579 U.S. 500, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), and *United States v. Tanksley*, 848 F.3d 347 (5th Cir. 2017). Due to the legal impacts of *Mathis*, *Hinkle*, and *Tanksley*, one or more of Jean's three Texas convictions no longer qualified as a controlled-substance offense for the purpose of the career offender Guideline. As a result, it is undisputed that if he were to be sentenced today, Jean would not be classified as a career offender under § 4B1.1.

In 2023, Jean filed a motion for compassionate release pursuant to § 3582(c)(1)(A)(i), arguing that three extraordinary and compelling reasons warranted compassionate release. First, and primarily at issue on appeal, Jean argued that non-retroactive changes in the law, due to *Mathis, Hinkle*, and *Tanksley*, would result in a substantially shorter sentence today and thus militates in favor of compassionate release. Second, Jean argued that his sentence was unjust because it was longer than that of his co-defendants and those convicted of more heinous offenses. Finally, Jean argued that his post-sentencing conduct and rehabilitation weigh in favor of compassionate release.

As to the first argument, the district court recognized that post-*Mathis, Hinkle*, and *Tanksley*, Jean would not be considered a career offender, and thus his Guidelines range would be substantially lower—roughly 160 to 185 months. [5] Though the district court noted that a non-retroactive change in the law "affects all prisoners sentenced under the prior law," the court nonetheless correctly concluded that "non-retroactive changes in sentencing law may constitute extraordinary and compelling reasons warranting compassionate release when other factors, such as the defendant's rehabilitation, are also present." Accordingly, the district court found that the non-retroactive changes in the law may favor compassionate release.

Next, the district court rejected Jean's argument that the disparity between the sentence imposed upon him and that imposed upon others weighed in favor of compassionate release. The district court identified several distinguishing

factors between Jean and his co-defendants before concluding that this disparity did not warrant compassionate release.

Finally, the district court considered Jean's argument that his post-sentencing conduct and rehabilitation, when combined with other factors, justified compassionate release. We agree that the record evidence of Jean's post-sentencing conduct is remarkable. As soon as Jean began his 292-month term of imprisonment, he worked with fervor toward self-improvement. In his first interview with the probation officer, as the Presentence Investigation Report explains, Jean stated that he "is truly sorry for putting himself, the court, and his family through this, and this will never happen again. He said he has been thinking about how he got into this situation, his thinking patterns, and what he can do differently in the future, including choices regarding his associates."

And this pattern of betterment continued. The district court gave "significant weight" to letters written by BOP officials in support of Jean's release. Of Jean, a BOP manager wrote:

> I have over 20 years of experience within the Federal Bureau of Prisons and very rarely have I come across an inmate that has truly worked on himself from the day of his admittance in the custody of the [BOP], at bettering himself, **\*281** for an eventual successful return into society.

The manager further described Jean as "a valuable, trustworthy, and indispensable asset," a "true testament of an individual who[ ] has educated not only himself, but many of his peers, as he prepares for re-entry back into society." Another supervisor with two decades of corrections experience described Jean as someone who "could become a vital spokesm[a]n and shining example to thwart recidivism." Arguing for compassionate release on Jean's behalf, the supervisor wrote that compassionate release would allow Jean to "continue his pursuit of excellence as [a] contributing member of society."

The district court further articulated that "Jean exuded a level of sincerity ... that the Court has never before witnessed from a criminal defendant." As the district court put it, "[t]he term 'rare' does not give Mr. Jean's rehabilitation and

renewed outlook on life justice—it is wholly extraordinary." With these remarkable statements guiding the district court, it held that "[w]hile neither are sufficient on their own, Mr. Jean's long, comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law together constitute compelling and extraordinary reasons warranting compassionate release." Finally, the district court weighed the 18 U.S.C. § 3553(a) factors and found that granting Jean's motion was consistent with these factors. Accordingly, the district court granted Jean's § 3582(c)(1)(A)(i) motion, and Jean was subsequently resentenced to time-served, followed by eight years of supervised release.

Since that time, Jean has been released from incarceration. He is currently serving as a caretaker for his 82-year-old mother; has a vehicle and is paying car insurance; is paying taxes; and is otherwise a contributing member of society.

The United States appealed Jean's compassionate release. [6]

## II

We review grants of compassionate release for abuse of discretion. *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022). "[A] court abuses its discretion if it 'bases its decision on an error of law or a clearly erroneous assessment of the evidence.' " *Chambliss*, 948 F.3d at 693 (quoting *United States v. Chapple*, 847 F.3d 227, 229 (5th Cir. 2017)).

## III

The question before the court is a simple one: does a sentencing court have the discretion to hold that non-retroactive changes in the law, when combined with extraordinary rehabilitation, amount to extraordinary and compelling reasons warranting compassionate release? Considering this question carefully, we answer it in the affirmative.

We explain first the discretion afforded to a sentencing court. With this discretion in mind, we conclude that there is no textual basis for creating a categorical bar against district courts considering non-retroactive changes in the law as one factor. Next, we explain that our precedent does not prevent us from reaching this outcome. Nor is this outcome inconsistent

with other unpublished decisions from this court. And finally, we explain that, although the Sentencing Commission's November 1, 2023 **\*282** Amendments are not binding on appeal, the Amendments support the outcome we reach today.

### A

Appellee contends that the statutory text and legislative history of § 3582(c)(1)(A)(i) permits a district court to consider non-retroactive changes in sentencing law when determining whether extraordinary and compelling reasons exist for compassionate release. We agree.

The United States Supreme Court has spoken clearly about the broad discretion afforded to sentencing courts in the context of motions for early release. In *Concepcion v. United States*, the Supreme Court considered whether district courts adjudicating motions under the FSA may consider intervening changes of law or changes of fact. 597 U.S. 481, 486, 142 S.Ct. 2389, 213 L.Ed.2d 731 (2022). The Supreme Court held that they may. *Id.* In *Concepcion*, the defendant pleaded guilty to one count of distributing five or more grams of crack cocaine. *Id.* at 487, 142 S.Ct. 2389. Due to both the crack-to-powder cocaine disparity and the career-offender enhancement, the defendant's Guidelines range was 262 to 327 months. *Id.* Without these changes, his Guidelines range would have been 57 to 71 months. *Id.* One year after Concepcion was sentenced, Congress passed the Fair Sentencing Act of 2010 to correct the sentencing disparity between crack and powder cocaine. *Id.* at 487-88, 142 S.Ct. 2389. Though initially not eligible for retroactive applicability because of his career offender enhancement, Concepcion became eligible to seek relief in 2018 with the passage of the FSA. *Id.* at 488, 142 S.Ct. 2389.

In 2019, Concepcion filed a pro se motion pursuant to the FSA. *Id.* He argued that his sentence should be reduced for two reasons: first, that due to changes in the law, he would no longer be considered a career offender, and thus his Guidelines range would have been only 57 to 71 months; and second, because of post-sentencing evidence of rehabilitation. *Id.* at 489, 142 S.Ct. 2389. The district court denied the defendant's motion, refusing to consider the Guidelines changes. *Id.* The court of appeals agreed, deepening a circuit split "as to whether a district court deciding a [FSA] motion must, may, or may not consider intervening changes of law or fact." *Id.* at 490, 142 S.Ct. 2389. The Supreme Court granted certiorari to resolve the split. *Id.* at 487, 490, 142 S.Ct. 2389.

In *Concepcion*, the Supreme Court went to great lengths to explain the broad discretion of the sentencing court in all sentencing matters:

> Federal courts historically have exercised this broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence. Such discretion is bounded only when Congress or the Constitution *expressly* limits the type of information a district court may consider in modifying a sentence.

*Id.* at 491, 142 S.Ct. 2389 (emphasis added).

And this discretion is deeply rooted in history. "From the beginning of the Republic, federal judges were entrusted with wide sentencing discretion." *Id.* at 490-91, 142 S.Ct. 2389 (citing Kate Stith & Jose Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 9 (1998)). That sentencing judges "enjoy discretion in the sort of information they may consider" is part of a "long" and "durable" **\*283** tradition dating back to before this country's founding. *Id.* at 492, 142 S.Ct. 2389 (quoting *Dean v. United States*, 581 U.S. 62, 66, 137 S.Ct. 1170, 197 L.Ed.2d 490 (2017)); *see also Williams v. People of State of New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("Both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used ...."); Kate Stith & Jose Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 14 (1998) ("Federal judges exercising sentencing discretion have always considered a wide variety of aggravating and mitigating factors relating to the circumstances of both the offense and the offender."); *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes

mitigate, sometimes magnify, the crime and the punishment to ensue."). The Court made clear that this discretion held by federal judges at initial sentencings "also characterizes sentencing modification hearings." *Concepcion*, 597 U.S. at 492, 142 S.Ct. 2389. Indeed, in the context of resentencing, the Supreme Court has held that sentencing judges may "consider the 'fullest information possible concerning the defendant's life and characteristics.' " *Id.* at 493, 142 S.Ct. 2389 (citation omitted).

With this in mind, the *Concepcion* Court concluded that nothing limits a district court's discretion except when *expressly* set forth by Congress in a statute or by the Constitution. *Id.* at 494, 142 S.Ct. 2389. And in the case of the FSA, though the Court noted that "Congress is not shy about placing such limits where it deems them appropriate," Congress had not expressly limited district courts to considering only certain factors there. *Id.* Accordingly, the Court held that "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id.* at 486-87, 142 S.Ct. 2389. Accordingly, the FSA allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the FSA, and while district courts are not required to *accept* the arguments presented by the defendant, district courts must consider them. *Id.* at 500-02, 142 S.Ct. 2389.

*Concepcion* clarifies that, in the context of sentencing modification, a sentencing court may consider any information not expressly limited by Congress or the Constitution. *Id.* at 492, 142 S.Ct. 2389. Of course, as discussed above—and unlike the FSA—Congress has expressly imposed two limitations upon sentencing courts in the context of § 3582(c)(1)(A)(i) motions: (1) the motions must be supported by "extraordinary and compelling reasons;" and (2) rehabilitation *alone* is an insufficient reason. Thus, the narrow question before us is whether Congress, in limiting the grounds for compassionate release to extraordinary and compelling reasons, limited a sentencing court's ability to consider non-retroactive changes in the law as a factor. It did not.

In deciding the same question before us, the United States Court of Appeals for the Ninth Circuit in *United States v. Chen* concluded that "[t]o hold that district courts cannot consider non-retroactive changes in sentencing law would be to create

a categorical bar against a particular **\*284** factor, which Congress itself has not done." 48 F.4th 1092, 1098 (9th Cir. 2022). We agree. Congress has *never* wholly excluded the consideration of any factors. Instead, it appropriately "affords district courts the discretion to consider a combination of 'any' factors particular to the case at hand." *Id.* (citing *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021)) ("[D]istrict courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.' " (citation omitted)) (emphasis added). Even in the context of the sole limitation it placed on district courts, Congress merely stated that rehabilitation *alone* was insufficient. 28 U.S.C. § 994(t). As observed by the First Circuit:

> On the whole, given the language that Congress deliberately chose to employ, we see no textual support for concluding that such changes in the law may never constitute part of a basis for an extraordinary and compelling reason. We are, moreover, reluctant to infer that Congress intended such a categorical and unwritten exclusion in light of its specific statutory exclusion regarding rehabilitation.

*Ruvalcaba*, 26 F.4th at 26 (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)); *see also United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021) (observing same). Congress did not prohibit district courts from considering rehabilitation in conjunction with other factors.

Moreover, the opposite outcome would contravene Congress's express intent as revealed through the legislative history. Congress adopted § 3582(c)(1)(A) due to the "need for a 'safety valve' with respect to situations in which a defendant's circumstances had changed such that the length of continued incarceration no longer remained equitable." *Ruvalcaba*, 26 F.4th at 26 (quoting S. REP. NO. 98-225, at 55-56, 121 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3238-39, 3304). As stated by the United States Court of Appeals for the First Circuit in *United States v. Ruvalcaba*, "[t]o serve as a safety valve, section 3582(c)(1)(A) must encompass an individualized review of a defendant's circumstances and permit a sentence reduction—in the district court's sound discretion—based on

any combination of factors (including unanticipated post-sentencing developments in the law)." *Id.*

And Congress, in drafting the compassionate release statute, expressly contemplated that "unusually long sentence[s]" or situations where "the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment" may serve as extraordinary and compelling reasons. S. REP. NO. 98-225, at 55-56 (1983). As stated in *Chen*, "[t]hough Congress did not end up expressly permitting the consideration of unusually long sentences or changes in sentencing law"— or any examples for that matter—"it also did not expressly prohibit it." *Chen*, 48 F.4th at 1099.

We understand *Concepcion* to hold that sentencing courts have broad discretion to consider what may be extraordinary and compelling, especially in the absence of an applicable policy statement from the Sentencing Commission. And without an express prohibition from Congress, sentencing courts are free to weigh whatever factors the parties argue. Of course, the Sentencing Commission has now issued an applicable policy statement, confirming this interpretation. *See infra* Part III.D. And as we explain below, the definition of "extraordinary and compelling" articulated in a decision from this court does not change this outcome.

**\*285 B**

The United States contends that this court's opinion in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), compels reversal of the district court in two ways: (1) that the habeas-channeling rule forecloses Jean's arguments; and (2) that *Escajeda*'s "unique to the life of the prisoner" language prevents a district court from finding that non-retroactive changes in the law are considered extraordinary and compelling.

1

First, the habeas-channeling rule does not foreclose Jean's arguments. In *Escajeda*, the district court denied the defendant's motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1). *Id.* at 185-86. Before the district court and on appeal, Escajeda argued that his sentence exceeded the statutory maximum and that he received ineffective assistance of counsel. *Id.* at 187. As

Escajeda's arguments challenged the legality and length of his sentence, arguments properly brought via a habeas writ, we held that the motion for compassionate release was not the proper avenue for relief. *Id.* This is known as the "habeas channeling rule," which requires that "attack[s] by a person in custody upon the legality of that custody" be brought via habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 484, 486, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In other words, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release ... his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. 1827. But the habeas channeling rule is violated only if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Edwards v. Balisok*, 520 U.S. 641, 643, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). We cannot hold, as the United States would prefer, that "any argument 'that an intervening change to sentencing law provides an extraordinary and compelling reason for early release necessarily implicates the validity of the relevant sentence.' "

There is no better way to see the distinction between where the habeas channeling rule does and does not apply than to compare the facts of *Escajeda* to the facts before the court today. In *Escajeda*, the appellant sought relief because, he argued, his sentence exceeded the statutory maximum and he received ineffective assistance of counsel. *Escajeda*, 58 F.4th at 187. As we aptly noted then, Escajeda raised "quintessential arguments for challenging the fact or duration of a prisoner's confinement." *Id.* Thus, the arguments were not cognizable under § 3582(c). *Id.* at 188. Compare that with the arguments raised by Jean. Unlike in *Escajeda*, Jean did not argue that his original conviction was imposed in violation of the Constitution or the laws of the United States. Rather, Jean argued that his sentence is now unjustly long following the decisions in *Mathis*, *Hinkle*, and *Tanksley*. That a sentence is unfairly long in light of the current state of the law does not "necessarily imply the invalidity of ... [Jean's] sentence." *Balisok*, 520 U.S. at 643, 117 S.Ct. 1584. The district court below said it best: "Adopting the Government's interpretation of *Escajeda* would nullify section 3582(c)." Accordingly, the habeas channeling rule does not bar Jean's arguments.

2

Second, the United States contends that *Escajeda*'s definition of extraordinary and **\*286** compelling bars Jean's compassionate release. In *Escajeda*, we stated that we "understand 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.' " *Escajeda*, 58 F.4th at 186. We further stated that incarcerated individuals may seek compassionate release "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* The United States contends that because non-retroactive changes in the law "affect[ ] all prisoners sentenced under the prior law," not just Jean, *Escajeda* prevents a finding that non-retroactive changes in the law may be considered alongside other factors to establish extraordinary and compelling reasons. The United States' narrow reading of *Escajeda* is unsupported. [7]

We read *Escajeda* to require that the extraordinary and compelling reasons for compassionate release, as a whole, must be "unique to the life of the prisoner." *Id.* The United States' reading focuses incorrectly on whether each individual justification for compassionate release is unique *in general*, rather than asking whether the reasons as a whole are unique in the specific context of the incarcerated person's life. But nothing in *Escajeda* requires that reading. In fact, *Escajeda* itself supports a broader reading.

*Escajeda* cites *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020), for its contention that the reasons must be "unique to the life of the prisoner." *Id.* For one, *Chambliss* does not provide us with the "unique to the life of the prisoner" language directly. *See Chambliss*, 948 F.3d at 693; *see also Adams v. Memorial Hermann*, 973 F.3d 343, 353 n.11 (5th Cir. 2020) (Smith, J.) (discussing the non-binding effect of dictum). So, we instead assume that it was gleaned from the context of *Chambliss.* With this in mind, *Escajeda*'s reliance on *Chambliss* is enlightening. In *Chambliss*, an incarcerated individual sought compassionate release due to his terminal liver cancer. *Id.* Liver cancer is, in general, not unique; in fact, it is one of the fastest-growing cancer types in the United States, and healthcare providers estimate that 1% of all Americans will be diagnosed with liver cancer during their lifetime. *See Liver Cancer*, CLEVELAND CLINIC, my.clevelandclinic.org/health/diseases/9418-liver-cancer (last visited June 28, 2024); *Liver Cancer*, MD ANDERSON CANCER CENTER, mdanderson.org/cancer-types/liver-cancer.html (last visited June 28, 2024). But nonetheless, a terminal illness such as the one in *Chambliss*

is the quintessential example of circumstances warranting compassionate release.

But the United States fails to see the distinction between a reason that is unique in its own right and a reason that is unique when applied to a particular defendant. Though terminal illnesses such as liver cancer are not themselves unique, they may have the effect of creating extraordinary and compelling reasons such that compassionate release is warranted. Similarly, though it is true that sentencing laws frequently change, non-retroactive changes in the law will affect each person individually. While changes in the law may, for some defendants, result in little to no changes to their Guidelines range, still others, like Jean, may be faced with decades-long disparities as a result of the same change—a truth conveniently ignored by the dissent. In other words, the question of whether non-retroactive changes in the law plus extraordinary rehabilitation rise to **\*287** the level of extraordinary and compelling reasons for compassionate release in any particular case should be left to the sound discretion of the district court.

As we have discussed, sentencing courts are tasked with the challenging role of conducting "an individualized review of a defendant's circumstances ... based on any combination of factors." *Ruvalcaba*, 26 F.4th at 26. It is the role of the sentencing court, rather than the court of appeals, to determine whether the defendant's circumstances, in toto, are so unique as to warrant compassionate release—regardless of whether more than one defendant may, at first blush, have suffered a similar experience. 18 U.S.C. § 3582(c)(1)(A)(i); *Ruvalcaba*, 26 F.4th at 26; *Chen*, 48 F.4th at 1098. [8]

### C

Nor does this outcome, as the United States would have us believe, *require* district courts to find that compassionate release is warranted because of non-retroactive changes in the law in any particular case. *Concepcion*, 597 U.S. at 502, 142 S.Ct. 2389 ("The [FSA] does not require a district court to be persuaded by the nonfrivolous arguments raised by the parties before it, but it does require the court to consider them."). In fact, albeit for different reasons, we agree with the outcome of our unpublished decision in *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023), wherein the district court denied compassionate release. [9]

In *McMaryion*, the district court denied a defendant's motion for compassionate release on the merits after considering all of his arguments, including that non-retroactive changes in the law militate in favor of compassionate release. No. 21-50450, 2023 WL 4118015, at \*1. In *McMaryion*, we affirmed the district court, concluding that it did not abuse its discretion in so finding that compassionate release was not warranted. *Id.* We too would affirm the denial of compassionate release in *McMaryion*, because the district court's decision to deny compassionate release is reviewed under the deferential abuse of discretion standard, and the district court did not abuse its wide discretion. *Id.* So long as the district court conducts a fulsome review of the arguments made by the parties, and the court does not abuse its wide discretion, its decision will stand. *See United States v. Martinez*, No. 23-50418, 2024 WL 658952, at \*1 (5th Cir. Feb. 16, 2024) (same); *United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at \*2 (5th Cir. Feb. 14, 2024) (same). *But see United States v. Elam*, No. 22-40373, 2023 WL 6518115, at \*2 (5th Cir. Oct. 5, 2023) (refusing **\*288** to consider non-retroactive changes in the law as a factor).

Accordingly, our precedent does not prevent us from affirming the district court's order granting compassionate release to Jean and instead supports our position.

### D

Finally, the United States argues that the November 1, 2023 Amendments to the Guidelines have no bearing on this appeal. We agree they are not directly applicable; the Amendments were not in effect at the time the district court granted Jean's motion, and thus are not the Guidelines that we consider on appeal in terms of binding application. [10] However, we would be remiss not to discuss them. Indeed, to reach an outcome that is contrary to the one now reached by the Sentencing Commission would be a fool's errand.

Congress has charged the Sentencing Commission with periodically reviewing and revising the Guidelines. *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). As the Supreme Court has recognized, because "[t]he Guidelines are of course implemented by the courts," Congress, in charging the Commission with revision responsibility, "necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Id.*

The Supreme Court has also stated that "[t]his congressional expectation alone might induce us to be more restrained and circumspect in using our certiorari power as the primary means of resolving such conflicts." *Id.* at 348-49, 111 S.Ct. 1854 (refusing to resolve a legal question "on which the Circuits have fallen into disagreement" where "the Commission has already undertaken a proceeding that will eliminate circuit conflict" surrounding the issue). And on several occasions, the Department of Justice ("DOJ") successfully opposed Supreme Court review on this very issue by arguing that the Sentencing Commission should first address the circuit split. *See, e.g., Jarvis v. United States*, No. 21-568, 2021 WL 5864543, at *19 (U.S. Dec. 8, 2021) ("Given that a decision by this Court would not preclude the Commission from issuing a new policy statement, applicable to prisoner-filed motions, that forecloses reliance on prospective amendments to the law in finding 'extraordinary and compelling reasons,' no sound reason exists for this Court's intervention at this time.").

In 2023, the Sentencing Commission, having obtained a quorum once again, exercised the authority delegated to it by Congress and resolved the circuit split before us today. In April 2023, the Sentencing Commission submitted amendments to the Sentencing Guidelines to Congress. Proposed Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Apr. 1, 2023). Congress chose not to intervene, and the amendments took effect on November 1, 2023. Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

**\*289** In relevant part, these amendments addressed compassionate release motions brought by criminal defendants and created a list of extraordinary and compelling circumstances that may justify a sentence reduction. *Id.* § 1B1.13. Accordingly, after November 1, 2023, district courts may consider the following extraordinary and compelling circumstances in their analysis: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) whether the defendant, while in custody, was a victim of abuse; (5) other reasons similar in gravity to items one through four; and (6) a change in the law resulting in the defendant receiving an unusually long sentence. *Id.*

Relevant to the dispute before us, this sixth option states the following:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* § 1B1.13(b)(6). In the commentary, the Sentencing Commission discussed its reasoning behind the Amendments in detail:

> Subsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A).

> The Commission considered whether the foregoing split among the circuit courts of appeals was properly addressed by the Commission, which typically resolves such disagreements when they relate to its guidelines or policy statements, or by the Supreme Court. In making that determination, the Commission was influenced by the fact that on several occasions the Department of Justice successfully opposed Supreme Court review of the issue on the ground that it should be addressed first by the Commission.

> The amendment agrees with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways. First, it permits the consideration of such changes only in cases involving "unusually long sentences," which the legislative history to the SRA expressly identified as a context in which sentence reduction authority is needed. Second, the

change in law itself may be considered an extraordinary and compelling reason only where it would produce a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed. Finally, to address administrative concerns raised by some commenters, the amendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce.

*Id.* The Commentary to § 1B1.13(b)(6) (internal citations omitted). Accordingly, after November 1, 2023, a non-retroactive change in the law may be considered in determining whether the defendant presents, as a whole, extraordinary and compelling reasons if: (1) the defendant has served at least ten years of the term of **\*290** imprisonment; (2) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (3) the defendant's individualized circumstances support compassionate release.

Now, the Sentencing Commission has resolved the split with a reasoned, middle-ground approach, but that is not good enough for the United States. At oral argument, the United States stated that even if Jean's motion had been filed after November 1, 2023, the United States still would have appealed—and it is not bluffing. Around the country, the DOJ is challenging grants of compassionate release pursuant to § 1B1.13(b)(6) on the basis that its enactment was an overstep of the Sentencing Commission's extremely broad statutory bounds. *See, e.g., United States v. Bolton,* No. 09-166, ––– F.Supp.3d ––––, 2024 WL 1966448 (E.D. La. May 3, 2024); *United States v. Ware,* No. 97-09, ––– F.Supp.3d ––––, 2024 WL 1007427 (N.D. Ga. Mar. 6, 2024); *United States v. Brown,* No. 95-66, ––– F.Supp.3d ––––, 2024 WL 409062 (S.D. Ohio Feb. 2, 2024). The DOJ is apparently fearful that there are so many people incarcerated based on now-unconstitutional or otherwise illegal laws; who have been incarcerated for ten years or more; whose sentence would be drastically different today; and whose individualized circumstances support compassionate release, that § 1B1.13(b)(6) will become a quasi-parole system. That is either a convenient exaggeration or a disturbing reality.

Either way, the United States' position "knocks down a straw man." *Ruvalcaba,* 26 F.4th at 27. As our sister circuits have held, "[t]here is a salient 'difference between automatic vacatur and resentencing of an entire class of sentences' on the one hand, 'and allowing for the provision of individual relief in the most grievous cases' on the other hand." *Id.*

(internal citations omitted). "Congress's judgment to prevent the former is not sullied by a district court's determination, on a case-by-case basis, that a particular defendant has presented an extraordinary and compelling reason due to his idiosyncratic circumstances," including the impact of non-retroactive changes in the law. *Id.* As the First Circuit puts it, "[a]s long as the individualized circumstances, taken in the aggregate, satisfy the 'extraordinary and compelling' standard, granting relief would be consistent with Congress's judgment that a modification of a sentence legally imposed may be warranted when extraordinary and compelling reasons for taking that step exist." *Id.*

In any event, we take note of the deference given to the Sentencing Commission by both Congress and the Supreme Court and find only that the Sentencing Commission's resolution of the circuit split further supports the conclusion we reached above.

IV

It is within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release. To be clear, it is also within a district court's sound discretion to hold, after fulsome review, that the same *do not* warrant compassionate release. For this court to hold otherwise would be to limit the discretion of the district courts, contrary to Supreme Court precedent and Congressional intent. We decline the United States' invitation to impose such a limitation. And, of course, district courts are now guided by the November 1, 2023 Amendments in future cases.

**\*291** For these reasons, we AFFIRM the district court's grant of Jean's motion for compassionate release and subsequent judgment.

Jerry E. Smith, Circuit Judge, dissenting:

The kindest thing I can say about the majority's zealous [1] opinion is that it is a horrifying violation of this court's well-respected rule of orderliness. I respectfully dissent.

\* \* \* \* \*

This appeal requires us to answer a question that has divided the circuits: Can a non-retroactive change in law ever constitute extraordinary and compelling circumstances for purposes of a motion under 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate-release motion")?

The First, Fourth, Ninth, and Tenth circuits say "yes" and allow district courts to consider non-retroactive changes in law as one factor when assessing whether extraordinary and compelling circumstances warrant compassionate release. [2] The Third, Sixth, Seventh, Eighth, and D.C. Circuits say "no" and do not allow district courts to consider non-retroactive changes in law when assessing motions for compassionate release. [3]

The majority joins the wrong side of that split. [4] Binding Fifth Circuit precedent requires us to hold that district courts may not consider non-retroactive changes in law when assessing whether a defendant has shown extraordinary and compelling circumstances. The Third, Sixth, Seventh, Eighth, and D.C. Circuits got it right.

## I.

The majority advances the thesis that *Concepcion v. United States*, 597 U.S. 481, 142 S.Ct. 2389, 213 L.Ed.2d 731 (2022), allows a district court to consider non-retroactive changes in law when assessing whether extraordinary and compelling circumstances warrant compassionate release. That is error.

*Concepcion* involved a narrow question: whether a district court may consider intervening changes in law or fact when adjudicating a motion under § 404 of the First Step Act. *See* **\*292** *id.* at 486–87, 142 S.Ct. 2389. That statute allows district courts to reduce sentences for certain offenses involving crack cocaine. *See* Pub. L. 115-391, § 404(b), 132 Stat. 5222. Specifically, § 404(b) "ma[de] retroactive the changes in the Fair Sentencing Act," a statute passed in 2010 to "correct the harsh disparities between crack and powder cocaine sentencing." *Concepcion*, 597 U.S. at 487–88, 497, 142 S.Ct. 2389.

The Supreme Court held "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500, 142 S.Ct. 2389. "It is only when Congress or the Constitution limits the scope of information

that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion ... is restrained." *Id.* at 486–87, 142 S.Ct. 2389. Because nothing in the relevant portions of the First Step Act "so much as hint[ed] that district courts are prohibited from considering evidence ... [of] Guidelines changes," district courts could consider those changes when resentencing a defendant under § 404. *Id.* at 496–97, 142 S.Ct. 2389.

The majority takes *Concepcion* to mean that, because "Congress did not prohibit district courts from considering rehabilitation in conjunction with other factors," we cannot prevent them from " 'consider[ing] non-retroactive changes in sentencing law' " without " 'creat[ing] a categorical bar against a particular factor, which Congress itself has not done' " (quoting *Chen*, 48 F.4th at 1098).

That errant conclusion, however, ignores the fact that "*the compassionate-release statute explicitly imposes just such a limit*, in authorizing a reduced term of imprisonment only for extraordinary and compelling reasons." *Jenkins*, 50 F.4th at 1200 (emphasis added). As the government avers persuasively, "§ 3581(c)(1)(A) contains a threshold requirement that a district court identify 'extraordinary and compelling reasons' warranting a sentence reduction."

That statutory language should be enough for the panel majority: It explicitly restricts a district court's discretion in a way that § 404 does not. [5] And, as I will explain in detail, we have construed "extraordinary and compelling reasons" to encompass only that which is "unique to the life of the prisoner." *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) (citations omitted).

A change in law applies to all prisoners equally and thus cannot be unique to the life of the prisoner. *Id.* [6] That means Congress *did* limit a district court's discretion by using the word "extraordinary," and—in the view of our circuit and others—that limit prevents district courts from considering non-retroactive changes in law when adjudicating a motion for compassionate release. [7]

**\*293** Additionally, "*Concepcion* concerned a different and unrelated provision of the First Step Act that explicitly applied retroactively." *McCall*, 56 F.4th at 1061. The First Step Act was a massive exercise in criminal-law reform that did "multiple things," and we should not assume "that every decision about any aspect of the First Step Act applies to every potential question under that statute." *King*, 40 F.4th at 596.

*Concepcion*'s broad language is best explained by the fact that § 404 was an entirely new statute that authorized a new kind of motion. Therefore, it made sense that Justice Sotomayor generally referred to "First Step Act motions" and the First Step Act—§ 404 motions had no other name. *See Concepcion*, 597 U.S. at 498–500, 142 S.Ct. 2389. In contrast, the First Step Act made one narrow change to compassionate release —allowing prisoners to bring the motion—but otherwise left that existing statutory scheme in place. *See United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021).

If the Supreme Court had intended *Concepcion* to alter the standard for compassionate release, it would have employed more than a single "*see also*" citation to § 3582(c)(1)(A) devoid of any discussion other than a parenthetical statement. *See Concepcion*, 597 U.S. at 495, 142 S.Ct. 2389. [8] Indeed, the Court actually used § 3582(c) to exemplify express statutory limitations that overcome the default tradition of discretion. *See id.* ("Congress has further imposed express statutory limitations on one type of sentencing modification proceeding .... *See also* § 3582(c)(1)(A) ....").

Therefore, *Concepcion*, by which we are firmly bound in cases where it applies, is inapposite and by no means requires us to authorize district courts to consider non-retroactive changes in law when adjudicating compassionate-release motions.

## II.

The majority utterly fails to follow circuit precedent faithfully, as our rule of orderliness requires.

This court "understand[s] 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.' " *Escajeda*, 58 F.4th at 186 (quoting *Extraordinary*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d ed. 1934; 1950)). That means "prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and *unique to the life of the prisoner.*" *Id.* (citation omitted) (emphasis added).

As the government avers persuasively, "being affected by a non-retroactive change in sentencing law is not unique to Jean; it affects all prisoners sentenced under the prior law." Indeed, "there is nothing remotely extraordinary

about statutes applying only prospectively." *Jenkins*, 50 F.4th at 1198. [9] That is why "nothing in the 30-odd year history of compassionate release hints that the sort of legal developments routinely addressed by direct or collateral review could qualify a person for **\*294** compassionate release." *McCall*, 56 F.4th at 1060 (cleaned up).

In short, an event that applies uniformly to *all* similarly situated prisoners cannot be unique to the life of *a* particular prisoner. [10] So, non-retroactive changes in law do not qualify as "extraordinary" as *Escajeda* defined that word in binding, published precedent.

But because of the rule of orderliness, the reader shouldn't be left to guess whether that is the proper interpretation of *Escajeda. Escajeda*, decided in January 2023, was followed five months later by *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, 2023 U.S. App. LEXIS 15712 (5th Cir. June 22, 2023) (per curiam) (unpublished). *McMaryion* stated, without qualification or limitation, that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id.* at \*2, 2023 U.S. App. LEXIS 15712 at \*3 (citing *Jenkins* and *McCall*). Even if that were not enough, this court relied on *McMaryion* in reaching the same result in *United States v. Elam*, No. 22-40373, 2023 WL 6518115, at \*1–2 (5th Cir. Oct. 5, 2023) (per curiam) (unpublished). And last but not least, a 2024 panel, addressing Jean's theory, held that "this court has rejected that same argument twice." *United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at \*2 (5th Cir. Feb. 14, 2024) (per curiam) (unpublished) (citing *Elam* and *McMaryion*).

One might reasonably conclude that in this circuit, the matter is settled. But the majority thumbs its nose at all those consistent, well-reasoned decisions and, in contrast, "read[s] *Escajeda* to require that the extraordinary and compelling reasons for compassionate release, as a whole, [ ] be unique to the life of the prisoner" (internal quotation marks and citation omitted). In its view, "nothing in *Escajeda*" requires that "each individual justification for compassionate release [be] unique *in general.*" So long as "a reason [ ] is unique when applied to a particular defendant," it can support a finding of extraordinary and compelling circumstances warranting relief.

If that is what *Escajeda* meant, then someone should have told *Escajeda*'s panel. The panel majority that decided *Escajeda*

also issued *McMaryion*, whose use of the word "support" severely undercuts the majority's view that *Escajeda* permits courts to find that non-retroactive changes in law can be extraordinary in combination with rehabilitation. If "non-retroactive changes in criminal law" cannot be used "to support a compassionate release motion," then there is no way in which such changes could ever combine with other factors, themselves insufficient, to justify compassionate release. *See McMaryion*, 2023 WL 4118015, at *2, 2023 U.S. LEXIS 15712, at *3. [11]

 **\*295** Jean is correct that two insufficient things can combine to become extraordinary. For example, if a prisoner has a moderate illness or trouble-some family issues, either of those facts could combine with rehabilitation to render his circumstances extraordinary, even if each individual fact did not. But presenting two insufficient things is different from presenting an insufficient thing together with something we are legally prohibited from considering because it is outside the scope of, or prohibited by, the statute. Jean has done the latter, so his motion should fail. [12]

To his credit, Jean has been rehabilitated. But that alone is insufficient to render his case extraordinary and compelling. *See* 28 U.S.C. § 994(t). He also would not have been classified as a career offender had he been sentenced today. But that also is legally irrelevant to the compassionate-release inquiry. So, the only thing the district court could consider—consistent with *Escajeda* and *McMaryion*—was the rehabilitation, which cannot support compassionate release on its own. Therefore, the district court erred in granting Jean's motion for compassionate release, and the panel majority should so hold.

III.

The majority is flat wrong in positing its far-flung theory that the Sentencing Commission's amended policy statement is entitled to persuasive weight.

*A. The amended policy statement does not govern this appeal.*

First, section III.D of the majority opinion is *dictum.* As the majority recognizes, § 1B1.13(b)(6) is not applicable to this appeal because Jean's motion was filed and decided before the amended policy statement went into effect.

We treat the "[c]ommentary to the guideline provisions ... as the legal equivalent of a policy statement." *United States v. Brigman*, 953 F.2d 906, 908 (5th Cir. 1992) (per curiam) (internal quotation marks and citations omitted). And "on direct appeal we may consider an amendment to commentary of the relevant guideline, even though the amendment did not become effective until after sentencing, if it is intended to clarify application of a guideline." *United States v. Huff*, 370 F.3d 454, 465–66 (5th Cir. 2004) (internal quotation marks and citation omitted). But we may not consider, on direct appeal, "an amendment which becomes effective post[-]sentencing" if that amendment is "substantive." *Id.* at 466.

That means, under *Brigman* and *Huff*, that we may consider the amended policy statement on direct appeal only if it was a "clarifying" amendment and not a "substantive" amendment. [13] "When an amendment addresses a matter as to which it notes that the circuits are in conflict we have suggested that this is an indication **\*296** [that] the amendment is not clarifying." *Huff*, 370 F.3d at 466 (citation omitted). Where the Sentencing Commission does not state that the amendment is "retroactively applicable[,] [that] may be an indication that it is substantive." *Id.* For an amendment to be clarifying, in contrast, "we have generally pointed to express language on the part of the Commission that the amendment is a clarifying one." *Id.*

The amendment was plainly substantive. It addressed a circuit split explicitly, did not indicate that it was retroactively applicable, and did not indicate that it was clarifying. Therefore, the pre-policy statement framework laid out in *Shkambi* governs this appeal.

*B. The amended policy statement is invalid.*

Second, even if the amended policy statement did apply to this appeal, it would not govern our treatment of Jean's motion. The Sentencing Commission's policy statements are generally binding when we adjudicate a § 3582(c) motion. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011). But "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution *or a federal statute.*" [14]

"[T]he Sentencing Commission [cannot] overrule circuit precedent interpreting a *statutory* provision." *United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (cleaned up).

That is because "the Commission does not have the authority to amend a statute" by adopting a reading contrary to binding precedent. *Id.* (cleaned up). So, if "the Commission's interpretation of § 3582(c)[(1)(A)] ignores the statute's plain text as construed in [*Escajeda*] ... it must give way." *Id.* (internal quotation marks and citations omitted).

In promulgating § 1B1.13(b)(6), the Sentencing Commission exceeded its congressionally delegated authority. As the majority notes, Congress instructed the Commission to "promulgat[e] general policy statements ... describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). But such policy statements must be "consistent with all pertinent provisions of any Federal Statute." *Id.* § 994(a). The Commission's attempt to include non-retroactive changes in law, which are both routine and uniformly applicable, in its definition of "extraordinary" is blatantly contrary to the plain meaning of that word.

As discussed above, "[t]here's nothing 'extraordinary' about new statutes or caselaw ...[;] these are the ordinary business of the legal system." *King*, 40 F.4th at 595. The Sentencing Commission has wide latitude to determine what constitutes extraordinary and compelling circumstances for the purposes of § 3582(c)(1)(A)(i). But that discretion is not a license to rewrite the statute or go beyond what the text will reasonably bear. In determining that something routine and uniformly applicable is extraordinary, the Commission's amended policy statement violates § 3582(c)(1)(A)(i)'s text as construed by our circuit and therefore is neither binding nor persuasive. [15]

**\*297** In short, *Escajeda* directly construed the phrase "extraordinary and compelling" as used in § 3582(c)(1)(a)(i).

That construction unambiguously excluded non-retroactive changes in law. *See McMaryion*, 2023 WL 4118015, at \*2, 2023 U.S. App. LEXIS 15712, at \*3. The Sentencing Commission "does not have the authority" to "override" the statute's plain meaning. *See Neal v. United States*, 516 U.S. 284, 290, 294, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996). That part of the amended policy statement is not persuasive and does not bind district courts when adjudicating motions for compassionate release moving forward.

\* \* \* \* \*

One might hope that on a court bound by precedent, a panel would adhere to the reasonable expectations that result from a string of recent decisions that enunciate the law in unmistakable terms. Otherwise, what is the hapless district judge supposed to do, knowing that a rogue panel might, at any time, depart from settled authority? Instead, however, this panel majority launches its own crusade for "truth, justice, and the American Way" [16] by playing legislator instead of judge.

In a naked effort to effect its own societal goals, the panel majority mutilates *Escajeda, McMaryion, Elam*, and *Cardenas.* [17] Because it also takes a Supreme Court opinion badly out of context and not-so-subtly endorses a dramatic expansion of the Sentencing Commission's power, I respectfully dissent.

**All Citations**

108 F.4th 275

---

**Footnotes**

1    Indeed, "Section 4205(g) was ... used to correct and reduce long sentences where a person in prison showed a demonstrated record of rehabilitation, and this was the Compassionate Release Statute Congress was familiar with when it enacted the modern Compassionate Release Statute." Shon Hopwood, *Second Looks and Second Chances*, 41 CARDOZO L. REV. 83, 101 (2019).

2    "Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances, so that sentencing courts could not use it as a *full and direct* substitute for the abolished parole system." Hopwood, *supra* note 1.

3　　*See also Guerrant v. United States*, —— U.S. ——, 142 S. Ct. 640, 640-41, 211 L.Ed.2d 522 (2022) ("It is the responsibility of the Sentencing Commission to address this division to ensure fair and uniform application of the Guidelines. In March 2021, I wrote concerning an unresolved Circuit split over the proper interpretation of a Guideline. The Sentencing Commission lacked a quorum of voting members then, and it still does today. At this point, the Sentencing Commission has not had a quorum for three full years. As the instant petition illustrates, the resultant unresolved divisions among the Courts of Appeals can have direct and severe consequences for defendants' sentences. I hope in the near future the Commission will be able to resume its important function in our criminal justice system.") (Sotomayor, J., joined by Barrett, J., respecting the denial of certiorari) (internal citations omitted).

4　　For motions brought after November 1, 2023, the Sentencing Commission's November 1, 2023 Amendments will provide the starting point. The Amendments allow a district court to consider non-retroactive changes in the law in conjunction with other factors in its compassionate release analysis. *See infra* Part III.D.

5　　Before his release, Jean served 177 months' incarceration.

6　　The United States also filed a motion for reconsideration, which was denied by the district court.

7　　This opinion does not cast doubt on whether *Escajeda* is good law. Instead, we merely reject the United States' interpretation of *Escajeda* as applicable to the case before us. *Escajeda*, of course, remains "good circuit law."

8　　This is a finding that may be disturbed only if the district court's decision was contrary to law or based on a clearly erroneous assessment of the evidence, neither of which exist here. *Escajeda*, 58 F.4th at 186.

9　　The dissent's contention that the rule of orderliness somehow binds us to interpret *Escajeda*'s dictum in the same manner as certain unpublished decisions of this court is most unavailing. *United States v. Perez-Espinoza*, 31 F.4th 988, 989 (5th Cir. 2022) (OLDHAM, J., joined by DAVIS, J. and WILLETT, J.) (declining to follow "unpublished, nonprecedential, and hence non-binding" decisions from this court); *Adams*, 973 F.3d at 353 n.11 (SMITH, J.) ("But because that statement was *dictum* in an unpublished decision, we are doubly unbound to it. *See, e.g., Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) (discussing the non-binding effect of *dictum*); *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 560 n.3 (5th Cir. 2015) ("Unpublished opinions are not binding on this court.")."); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608 n.11 (5th Cir. 2018) (SMITH, J.) (refusing to follow an unpublished decision of this court on the basis that unpublished decisions are not binding).

10　　*But see United States v. Sanchez*, 527 F.3d 463, 466 (5th Cir. 2008) (vacating and remanding for resentencing where the district court failed to "utilize[ ] the proposed new amendments [of the Sentencing Commission] in determining Sanchez's sentencing range," as the "district court's failure to do so constituted plain error"); *United States v. Armstead*, 114 F.3d 504, 508 (5th Cir. 1997) ("Where, as in this case, evidence of the Commission's policies and goals are publicly available to the courts, we should utilize these proposed new amendments in making determinations as to 'analogous guidelines' for sentencing purposes.").

1　　The majority's ideological fervor is betrayed, *inter alia*, by its closing *dictum*:

　　Now, the Sentencing Commission has resolved the split with a reasoned, middle-ground approach, but that is not good enough for the United States. At oral argument, the United States stated that even if Jean's motion had been filed after November 1, 2023, the United States still would have appealed— and it is not bluffing .... The DOJ is apparently fearful that there are so many people incarcerated based on now-unconstitutional or otherwise illegal laws; who have been incarcerated for ten years or more; whose sentence would be drastically different today; and whose individualized circumstances support

compassionate release, that § 1B1.13(b)(6) will become a quasi-parole system. That is either a convenient exaggeration or a disturbing reality.

2    *See United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1099 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1046–47 (10th Cir. 2021).

3    *See United States v. Andrews*, 12 F.4th 255, 261–262 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1065–66 (6th Cir. 2022) (en banc), *cert. denied*, ––– U.S. ––––, 143 S. Ct. 2506, 216 L.Ed.2d 461 (2023); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1207 (D.C. Cir. 2022).

4    Actually, that's not quite right: As I will explain, this court had already joined the proper side of the split. This rogue panel majority splits not with other circuits, but with the Fifth Circuit Court of Appeals.

5    *Cf. McCall*, 56 F.4th at 1062 ("A defendant must first satisfy [§ 3581(c)-(1)(A)(i)'s] threshold requirement, showing [that] some extraordinary and compelling reason justifies a sentencing reduction." (cleaned up)).

6    *See also United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (Easterbrook, J.) ("There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system ....").

7    Judge Easterbrook hit the nail on the head in *King*: "[King] contends that *Concepcion v. United States*, requires us to ... hold that anything at all—factual or legal, personal or systemic, routine or unique—may be treated as 'extraordinary and compelling.' That would be hard to reconcile with the language of the statute. Routine is the opposite of extraordinary." *Id.* (internal citation omitted).

8    We are, of course, "generally bound by Supreme Court dicta where that dicta is recent and detailed." *Garrett v. Lumpkin*, 96 F.4th 896, 902 n.4 (5th Cir. 2024) (internal quotation marks and citation omitted). But a single citation to the compassionate-release statute cannot be said to render that *dictum* "detailed."

9    *See also Crandall*, 25 F.4th at 586 ("Congress from time to time prospectively increases or decreases existing criminal penalties, so that circumstance may not be 'extraordinary' as an empirical matter.").

10    And that is what renders the majority's clever citation to liver cancer inapposite. Liver cancer may be one of the most common cancers in the U.S. But it is not uniformly applicable to an entire class of prisoners in the way that a non-retroactive change in the law is. Every single prisoner in the nation who was sentenced under the prior regime is impacted, so the change in law cannot be extraordinary under any fair reading of that word.

11    *See also Crandall*, 25 F.4th at 586 ("Adding a legally impermissible ground to other insufficient factual considerations cannot justify a sentence reduction." (citation omitted)); *Jenkins*, 50 F.4th at 1202 ("[I]f an intervening judicial decision by itself could never support compassionate release, we fail to see how such a legally impermissible consideration could do so when combined with other insufficient factual considerations." (internal quotation marks and citation omitted)).

12    The majority notes that Jean "is currently serving as a caretaker for his 82-year-old mother." That commendable fact could have combined with his rehabilitation to warrant compassionate release, and Jean can file a successive § 3582 motion to try his luck on that ground. *See United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022) (stating that "§ 3582(c) does not prevent prisoners from filing successive motions."). But Jean did not rely on his caretaking role when filing the instant motion—instead, he did what *Escajeda* and *McMaryion* prohibit: Using a non-retroactive change in law "to support a compassionate release motion." *McMaryion*, 2023 WL 4118015, at *2, 2023 U.S. App. LEXIS 15712, at *3.

13    *Cf. United States v. Handlon*, 97 F.4th 829, 833 (11th Cir. 2024) (per curiam) ("[W]e can retroactively apply [an] amendment in this appeal only if it is a clarifying amendment, not if it is a substantive amendment." (internal quotation marks and citation omitted)).

14    *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (emphasis added); *see also id.* at 42, 113 S.Ct. 1913 ("The principle that the Guidelines Manual is binding on federal courts applies as well to policy statements.").

15    *See Stinson*, 508 U.S. at 38, 113 S.Ct. 1913; *see also United States v. Labonte,* 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) ("Broad as [the Sentencing Commission's] discretion may be, however, it must bow to the specific directives of Congress.").

16    As WIKIPEDIA describes it, "a catch-phrase of the comic-book character Superman."

17    I am well aware that of those four decisions, only *Escajeda* is published and therefore binding precedent; the others serve only as persuasive authority, much as would a decision from another circuit. But that shouldn't matter. The way the rule of orderliness is supposed to work is that once a published opinion (*Escajeda*) is issued, later panels give it fealty. Assuming that a still-later panel—such as the one here in *Jean*—is willing to abide by the rule of orderliness, panels such as those in *McMaryion, Elam,* and *Cardenas* are free to publish their work but may reasonably see no need to do so.

Not to belabor what should be obvious under the rule of orderliness, but here we have a published opinion by Panel A that makes certain holdings. Then come unpublished opinions from Panel B, Panel C, and Panel D that properly interpret and apply Panel A's holding. So far, so good. But now we have a majority from Panel E that attempts to overrule the holdings of the previous four panels. It is only reasonable to conclude that the Panel A opinion is still good circuit law going forward. But today's majority likely would say otherwise.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.